1  ROBBINS GELLER RUDMAN
    & DOWD LLP
2  DENNIS J. HERMAN (220163)
   WILLOW E. RADCLIFFE (200087)
3  JOHN H. GEORGE (292332)
   Post Montgomery Center
4  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
5  Telephone:  415/288-4545
   415/288-4534 (fax)
6  dennish@rgrdlaw.com
   willowr@rgrdlaw.com
7  jgeorge@rgrdlaw.com

8  Lead Counsel for Plaintiff

9

10                     UNITED STATES DISTRICT COURT

11                    CENTRAL DISTRICT OF CALIFORNIA

12  MARK STOYAS and NEW              )  Case No. 2:15-cv-04194-DDP(JCx)
    ENGLAND TEAMSTERS &              )
13  TRUCKING INDUSTRY PENSION        )  CLASS ACTION
    FUND,                            )
14                                   )  DECLARATION OF ANDREW M.
                        Plaintiffs,  )  PARDIECK
15                                   )
              and                    )
16                                   )
    AUTOMOTIVE INDUSTRIES            )
17  PENSION TRUST FUND, Individually )
    and on Behalf of All Others Similarly )
18  Situated,                        )
                                     )
19                    Lead Plaintiff, )
                                     )
20        vs.                        )
                                     )
21  TOSHIBA CORPORATION,             )
                                     )
22                     Defendant.    )
                                     )
23  _____)

24

25

26

27

28

1129303_1

## I.    BACKGROUND AND QUALIFICATIONS

1.    This declaration is based on my study and experience with Japanese law.[1] As set out in my vitae, after completing my undergraduate degree at Harvard College, I graduated with a Juris Doctor (J.D.) degree from the Indiana University School of Law, Bloomington.   After admission to the Indiana State Bar, I enrolled in the Hokkaido University School of Law in Japan and subsequently received a doctorate degree in law (*Hougaku Hakase*), or Doctor of Juridical Science (S.J.D.), from there.

2.    As part of and following graduate school, I have researched and published works on Japanese law, in Japanese.  As set out in my vitae, Japanese law journals, including Hanrei Taimuzu, have accepted and published articles that I have written on Japanese law.   The Commercial Law Centre (Shouji Houmu Kenkyuukai) published a book that I wrote comparing Japanese and American securities law.   The Legal Research Foundation of the Japanese Federation of Japanese Bar Associations favorably reviewed that work in its Legal Affairs Bulletin describing it as "a work that has practical value."[2]

3.    I have also written, in English, on various aspects of Japanese law, including contract law, consumer finance law, and securities law, and published that work in law journals located in the United States and Europe.[3]  I have given invited lectures on Japanese law in Japan, including for the Japan Federation of Bar Associations, Australia, and the United States.  I am not licensed as an attorney in Japan, but my education and experience in Japan has enabled me to research, publish, and present on Japanese law in a variety of fora.

---

[1]    *See* Pardieck Curriculum Vitae, Ex. A.

[2]    Nichibenren Hōmu Kenkyū Zaidan [Legal Research Foundation of the Japanese Federation of Japanese Bar Associations], HOMU SOKUHO [LEGAL AFFAIRS BULLETIN] (No. 2, June 30, 2001), available at https://www.jlf.or.jp/members/hanrei_mailmag/hanrei_data002.shtml.

[3]    *See supra* note 1.

- 1 -

4. Apart from my work in academia, I have served as general counsel, in Tokyo Japan, for Temple University, Japan Campus. A significant part of my responsibilities as general counsel involved researching Japanese law in order to ensure compliance on issues ranging from corporate registration requirements to labor law.

5. I am currently an Assistant Professor of Law at the Southern Illinois University School of Law, in Carbondale, Illinois, where I teach courses related to civil litigation and a comparative law course focusing on Japanese law. I am also principal of Japan-America Consulting, L.L.C., and, in this capacity, research and consult on issues relating to Japanese law.

II.   **SUMMARY OF OPINIONS**

6. I have been asked to comment on the accessibility of Japanese law in the United States; the weight accorded judicial decisions, both Japanese and foreign, in Japan; the development of Japan's securities law; and certain aspects of discovery in Japan. I was also asked to review and provide information on the case against Toshiba filed in Osaka District Court.

7. In preparing this declaration, I reviewed the December 17, 2015 Amended and Consolidated Class Action Complaint filed by Plaintiffs; the Memorandum of Points and Authorities in Support of Defendant Toshiba Corporation's Motion to Dismiss; the Declaration of Ayumi Wada in Support of Toshiba Corporation's Motion to Dismiss; and the Declaration of Toru Ishiguro in Support of Toshiba Corporation's Motion to Dismiss.

8. My opinions, in summary, are: first, the Japanese legal system is well-developed. Its legal standards are readily ascertainable, from the United States, through the use of publically accessible legal databases, including those maintained by Japan's Ministry of Justice and Supreme Court, and through commercial databases such as LexisNexis JP and Westlaw Japan. There is also a substantial body of

1  scholarship in English addressing Japanese law, and there are resources available to

2  translate Japanese law that is not accessible in English.

3  　　　9.　　Second, Japan's legal system is part of the Civil Law tradition.  As such,

4  decisions by the Supreme Court may be *de facto* binding and the reasoning of the

5  lower courts may be persuasive, but the doctrines of *stare decisis* and *res judicata* as

6  defined by the common law are foreign to Japan.  A decision by a United States court

7  regarding claims by American plaintiffs not parties to proceedings in Japan will not

8  directly affect the courts in Japan, though it may be offered as a reference work.

9  　　　10.　　Next, there is statutory authority and a substantial and growing body of

10  judicial decisions and scholarly literature in Japan addressing civil liability for false

11  and misleading statements made in disclosure documents filed subsequent to public

12  offering or distribution.

13  　　　11.　　Japan's Financial Instruments and Exchange Act defines civil liability

14  under Article 21-2 of the Act.  There are currently thirty-six judicial decisions

15  interpreting and applying Article 21-2, including three (3) Supreme Court decisions.

16  There are also numerous other judicial decisions, including another Supreme Court

17  decision, that inform the analysis by interpreting concepts such as materiality,

18  causation, and calculation of damages pursuant to Japan's negligence statute, Civil

19  Code Article 709.

20  　　　12.　　Finally, depositions for civil litigation in the United States are routinely

21  taken in Japan, at the United States Embassy in Tokyo and the Consulate in Osaka.  In

22  contrast, discovery devices commonly used in the United States, including

23  depositions, are unavailable in civil litigation in Japan.  Discovery is limited: some

24  practitioners suggest "[t]here is virtually no discovery in Japan."[4]  As a result, civil

25  litigation there presents hurdles not found in the United States for litigants,

26

27  [4]　Steven Comer & Chie Yakura, *Litigation in Japan*, THE AMERICAN

28  LAWYER 23 (Oct. 2014).

- 3 -

particularly in asymmetrical litigation where the party with the burden of proof is not already in possession of relevant information.

13.   Each of these points is discussed in additional detail below.

## III.   THE JAPANESE LEGAL SYSTEM

### A.   The Civil Law Tradition in Japan

14.   Japan has a long history of "legal pluralism."[5]   As early as the seventh and eighth century, it adopted, and adapted, significant portions of the Chinese legal system.[6]   During the Meiji Reformation, it adopted, and adapted, versions of the legal systems and Civil Law codes then found in France and Germany.[7]   Following the Second World War, U.S. law and U.S. advisors shaped Japan's post-war constitution, as well as revisions to some of its codes and special laws, including Japan's Securities and Exchange Act of 1948.[8]

15.   While the 1948 Securities and Exchange Act is modeled almost entirely on the United States' Securities Act and Securities Exchange Act,[9] Japan's legal system remains firmly part of the Civil Law tradition.[10]

16.   The Civil Law tradition is distinguished from the Common Law in its defined sources of law.   According to Civil Law scholars, following a tradition of legislative positivism, "[a]ccepted theory of sources of law in the civil law tradition

---

[5]   Merryll Dean, JAPANESE LEGAL SYSTEM 147 (1997).

[6]   Hiroshi Oda, JAPANESE LAW 13 (Oxford Press 3rd ed.  2009).

[7]   *Id*. at 18-19.

[8]   *Id*.

[9]   Makoto Yazawa, *A Synopsis of Securities Regulation in Japan*, in JAPANESE SECURITIES REGULATION 24 (Louis Loss et al. eds. 1983).

[10]   *See* Oda, *supra* note 6, at 13; Port et al., COMPARATIVE LAW:  LAW AND THE PROCESS OF LAW IN JAPAN (3rd ed. 2015)("The modern Japanese legal system has many attributes of a classic Civil Law system.").

- 4 -

1129303_1

recognizes only statutes, regulations, and custom as sources of law."[11]   With the advent of constitutional courts, at the top of a modern hierarchy is the country's constitution, followed by codes and other legislation, executive decrees and regulations pursuant to grants of legislative authority, local ordinances, and custom.[12]

17.   Japanese law scholars have described Japan's sources of law similarly.[13] Japan's constitution is the "supreme law of the nation" followed by statutory laws enacted by the national Diet, then cabinet orders, then ministerial ordinances. [14]

18.   Civil law scholars describe "the common law doctrine of *stare decisis*— i.e., the power and obligation of the courts to base decisions on prior decisions" as "obviously inconsistent with the separation of powers as formulated in civil law countries…. Judicial decisions are not law."[15]   As a consequence, the "orthodox view" is that "no court is bound by the decision of any other court in a civil law jurisdiction."[16]

19.   The Civil Law tradition is also distinguished from the Common Law in its legal reasoning.  "In the civil-law tradition, the reasoning process is deductive, proceeding from stated general principles or rules of law contained in the legal codes to a specific solution.  In common-law countries the process is the reverse – judges

---

[11]   John H. Merryman & Rogelio Perez-Perdomo, THE CIVIL LAW TRADITION 24 (3rd ed. 2007).  *See also* Vivienne O'Connor, *Common Law and Civil Law Traditions* 11 (INPROL, March 2012), available at http://inprol.org/publications/11042/common-law-and-civil-law-traditions.

[12]   O'Connor, *supra* note 11, at 11.

[13]   Oda, *supra* note 6, at 26-52.

[14]   *Id*. at 27.

[15]   Merryman & Perez-Perdomo, *supra* note 11, at 23.

[16]   *Id*. at 46.

1  apply inductive reasoning, deriving general principles or rules of law from
2  precedent…extracting an applicable rule, which is then applied to a particular case."[17]

3      20.    Despite a Civil Law paradigm that envisions a judge applying rather than
4  interpreting law,[18] there are judge-made legal norms interpreting the different codes
5  and statutes.[19]  Judicial decisions are published and referenced by Civil Law courts.[20]

6      21.    The scholarship on Japanese law suggests the same holds true for Japan.
7  "The Japanese legal system is primarily based on statutory laws.  However, this does
8  not mean that case law is insignificant."[21]   According to one Japanese scholar, "the
9  prevailing view is that court judgments are sources of law, but in a supplementary
10 way.  This is because precedents are not binding on the courts in the same way as
11 statutory laws are binding on them.  The doctrine of *stare decisis* has no explicit basis
12 in Japanese law.  Therefore the courts are theoretically free to render judgments
13 against establish precedent."[22]

14     22.    At the same time, deviation from Supreme Court precedent provides a
15 grounds for appeal[23] and, because of this possibility, lower courts usually follow

---

17     James G. Apple & Robert P. Deyling, *A Primer on the Civil-Law System* 37, available at http://www.fjc.gov/public/pdf.nsf/lookup/CivilLaw.pdf/$file/CivilLaw.pdf.

18     *Id*.

19     *Id*.  The Federal Judicial Center's primer on the Civil Law states: "[i]n civil-law systems, the role and influence of judicial precedent, at least until more recent times, has been negligible."  *Id*. at 36.

20     Merryman & Perez-Perdomo, *supra* note 11, at 47.

21     Oda, *supra* note 6, at 42.

22     *Id*. at 43.

23     The Code of Civil Procedure provides that a lower court decision containing "a determination that is inconsistent with precedents rendered by the Supreme Court" serves as a basis for review by the Supreme Court of that lower court decision. Minji Soshou Hou [Code of Civil Procedure], No. 109 of 1996, at Art. 318(1). Tentative translation available at http://www.japaneselawtranslation.go.jp/law/detail/?ft=2&re=2&dn=1

- 6 -

1   Supreme Court precedent.  "This is often denoted as the *de facto* binding force of

2   precedent."[24]

3           23.     Lower court decisions may also offer examples of persuasive reasoning

4   for other lower courts.  Practitioners may attach as reference works copies of judicial

5   decisions to papers filed with the court, though some judges are reported to request of

6   counsel that they not submit such decisions.

7           24.     The fact that Supreme Court decisions are not legally binding has, at

8   times, enabled lower courts to reject and ultimately change Supreme Court doctrine.

9   "Sometimes, the accumulation of lower court judgments against the Supreme Court's

10  precedent has eventually led to a change of view by the latter."[25]

11          25.     Japan's Constitution and statutes define the weight accorded its judicial

12  decisions.  Japan's Constitution provides that judges in Japan are "bound only by [the]

13  Constitution  and  the  laws  of  Japan."[26]   It  also  provides  that  Japan's  national

14  legislature, the Diet, "shall be the sole law-making organ of the State."[27]

15          26.     The statute organizing the courts in Japan addresses the power of the

16  courts of appeal to bind lower courts.  Article 4 provides simply that:  "A conclusion

17  in a judgment of a higher instance court shall bind the lower instance courts with

18  respect to the case concerned."[28]

19  _____

20  &yo=%E6%B0%91%E4%BA%8B%E8%A8%B4%E8%A8%9F%E6%B3%95&x
    =0&y=0&ia=03&ky=&page=1.

21  [24]     *Id.*

22  [25]     Oda, *supra* note 6, at 44.  Judicial norms may also serve as a basis for

23  legislative revisions to statutory law.  Japanese law scholars have, for
    example, documented the particular influence of the courts on labor law

24  and land and housing law.  *See, e.g.,* Daniel H. Foote, *Judicial Creation of
    Norms in Japanese Labor Law: Activism in the Service of Stability?*, 43 UCLA L.

25  REV. 635, 538 (1996); John O. Haley, THE SPIRIT OF JAPANESE LAW 124 (1998).

26  [26]     Kenpou [Constitution], Art. 76(3).

27  [27]     *Id.* at Art. 41.

28  [28]     Saibansho Hou [Court Act] No. 59 of 1947, Art. 4, available at
    Japanese Law Translation,

- 7 -

1129303_1

27.     Japan's Code of Civil Procedure also narrowly defines the "scope of res judiciata" to include only that portion of the judicial opinion "included in the main text" of the judicial opinion.[29]   The "main text" of a judicial decision typically includes only the disposition of the case, *e.g.*, defendant is ordered to pay plaintiff prescribed damages with interest or plaintiff's claim is dismissed.

28.     The Code of Civil Procedure goes on to state that a final judgment "shall be effective" only against the parties; another person for whom a party has served as a plaintiff or defendant; a successor in interest to the litigation; or a person who possesses the subject of matter of the claim on behalf of one of the above persons.[30]

**B.     Sources of Law in Translation**

29.     Japan's Ministry of Justice maintains a database of English translations of Japanese law accessible via the internet.[31]   All translations are "unofficial"; "[o]nly the original Japanese texts of the laws and regulations have legal effect."[32]   However,

---

http://www.japaneselawtranslation.go.jp/law/detail/?ft=2&re=2&dn=1&yo=%E8%A3%81%E5%88%A4%E6%89%80&x=71&y=20&ia=03&ky=&page=2.

[29]     Code of Civil Procedure, *supra* note 24, at Art. 114(1).

[30]     *Id*. at Art. 115.

[31]     Ministry of Justice, JAPANSE LAW TRANSLATION, available at http://www.japaneselawtranslation.go.jp/?re=2.

[32]     *Id*.

1129303_1

these translations are widely used and considered reliable.[33]   The translations go
through a review process, and tentative translations are noted as such.[34]

     30.    The Ministry of Justice has posted an approved translation of the
Financial Instruments and Exchange Act, dated June 2, 2010.[35]The statute has been
revised since and is available in its current form,[36] in Japanese, in a database of laws
and ordinances maintained by the Ministry of Internal Affairs and Communication,
again publically accessible via the internet.[37]

     31.    Japan's Supreme Court maintains a database of select judicial decisions
from both the supreme and lower courts that is accessible via the internet.[38]
Comprehensive databases on Japanese law and legal literature are also available
through commercial sources, such as LexisNexis JP and Westlaw Japan.

---

[33]    *See, e.g.,* Armour et al., *The Evolution of Hostile Takeover Regimes in Developed and Emerging Markets: An Analytical Approach*, 52 HARV. INT'L L. J. 219 (2011); Janis Sarra & Masafumi Nakahigashi, *Corporate Social Responsibility in the Pacific Rim: Challenges for Corporate Social Responsibility in Japan*, 45 U.B.C. L. REV. 779 (2012); Mark A. Levin, *Successes, Failures, and Remaining Issues of the Justice System Reform in Japan*, 36 HASTINGS INT'L & COMP. L. REV. 475 (2013).  I have also reviewed the translations used in Mr. Toru Ishiguro's declaration, and it appears that he quotes in large part the Ministry of Justice translation of the FIEA in his declaration.  *See* Declaration of Toru Ishiguro in Support of Defendant Toshiba Corporation's Motion to Dismiss, pp. 2-5.

[34]    Ministry of Justice, Japanese Law Translation, *supra* note 31.

[35]    *Id.* at http://www.japaneselawtranslation.go.jp/law/detail/?ft=2&re=2&dn=1&yo=%E9%87%91%E8%9E%8D%E5%95%86%E5%93%81%E5%8F%96%E5%BC%95%E6%B3%95&x=36&y=7&ia=03&ky=&page=1.

[36]    Ministry of Internal Affairs and Communications, *Hou De-ta Teikyou Shisutemu* [System to Provide Law Data], *available at* http://law.e-gov.go.jp/cgi-bin/idxsearch.cgi.

[37]    Oda, *supra* note 6, at 27.

[38]    Courts in Japan, Saibanrei Jouhou [Case Information], available at http://www.courts.go.jp/app/hanrei_jp/search1.

IV.   **JAPAN'S FINANCIAL INSTRUMENTS AND EXCHANGE ACT**

   A.   **Historical Context**

   32.   Japanese law regulating its securities markets dates back to 1874, when the Meiji government adopted an ordinance based on the rules of the London Stock Exchange.[39] Japan followed with its 1893 Exchange Act and then the 1941 Japanese Securities Exchange Act.[40] As discussed above, in 1948, Japan adopted its Securities Exchange Act (SEA), a statute modeled almost entirely on U.S. securities laws.[41]

   33.   Japan's SEA instituted a system of required disclosures for publically traded companies that has been revised, and strengthened, over the years.[42] Significant revisions relating to investor protection occurred in 1971, with the implementation of additional quarterly and special reporting requirements and increased civil liability for misrepresentations in public disclosures.[43] In 1997, Japan strengthened its criminal penalties for violations of the duty to disclose, and, in 2004, it introduced a system for assessing administrative penalties for such violations.[44]

---

[39]   *See* Kawamura Yuusuke, *Senzen no Ginkou Shouken Seidou* [The Banking and Securities System Before the War], 1048 SHOUJI HOUMU 38 (1960).

[40]   *See* Tatsuta Misao, SHOUKEN TORIHIKI HOU I [SECURITIES TRANSACTIONS LAW VOL. I] 40-42 (1994).

[41]   *See* Yazawa, *supra* note 9, at 24; Satoshi Nakamura, *Kinyuu Shouhin Torihiki Hou Gairon* [An Outline of the Financial Instruments and Exchange Act], BUSINESS ISSUES, available at LexisNexis JP.

[42]   Nihon Hourei Sakuin [Index of Japanese Laws and Ordinances], available at http://hourei.ndl.go.jp/SearchSys/.

[43]   Izumi Kawashima, *Fujitsu no Ryuutsuu Kaiji ni Kansuru Minji Sekinin – Igirisu Hou wo Sankou ni* [Civil Liability for Misrepresentations in Secondary Market Disclosures With Reference to Changes in English Law], 5 RID DISCLOSURE NEWS 105-106 (July 2009), available at https://dspace.wul.waseda.ac.jp/dspace/bitstream/2065/38758/1/ShakaiKagakuSogoKenkyu_13_1_Kawashima.pdf.

[44]   *Id.*

34.     In 2006, Japan significantly revised its securities statute, increasing its regulatory scope, and renaming it the Financial Instruments Exchange Act (FIEA).[45] The Financial Services Agency, the principal regulator of Japan's financial markets, identified "four pillars" of the 2006 revision: expanding the disclosure regime for publicly traded companies; strengthening investor protection measures for speculative products; developing legal tools to respond to improper trading; and strengthening self-regulatory functions of the markets.[46]

35.     Article 1 states the goals of the act, emphasizing investor protection: the act seeks to "ensure fairness in…the issuance of Securities and transactions of Financial Instruments…as well as to achieve fair price formation."[47]  The stated goal is to contribute to both "the sound development of the national economy and the protection of investors."[48]

36.     As part of the 2006 revisions, Japan adopted Article 21-2,[49] which imposes civil liability on issuers of publically traded securities for false or misleading statements made in specified disclosure documents.[50]

37.     Prior to 2006, Japan's securities statute provided for civil liability for misrepresentations by companies and their officers in disclosure documents associated

---

[45]     Financial Services Agency [Kinyuucho], *Kinyuu Shouhin Torihiki Hou Ni Tsuite* [About the Financial Instruments and Exchange Act], http://www.fsa.go.jp/policy/kinyusyohin/.

[46]     *Id*.

[47]     Kinyuu Shouhin Torihiki Hou [Financial Instruments and Exchange Act ("FIEA")] Law No. 25 of 1948, as revised, at Art. 1.

[48]     *Id*.

[49]     *See, e.g.*, Financial Supervisory Agency [Kinyuucho], *Jimukyoku Setsumei Shiryou — Kyogi Kaiji Shourui ni Kakaru Songai Baisho Sekinin* [Secretariat Explanatory Materials—Damages Liability for False Disclosure Documents (November 20, 2013)], available at http://www.fsa.go.jp/singi/singi_kinyu/risk_money/siryou/20131121/02.pdf.

[50]     *Id*. at 3.

- 11 -

with public offerings and distributions in the primary market, but it was silent regarding civil liability for representations that affected trading in the secondary markets.[51]

38.     Investors in the secondary markets relied instead on tort law found in Japan's Civil Code.[52]  According to Japan's Financial Supervisory Agency, this placed a heavy burden of proof on investors, which the 2006 amendments sought to lighten. The Financial Supervisory Agency explains that the 2006 amendments, including Article 21-2, were intended to strengthen investors' ability to pursue liability through civil lawsuits, deter wrongful acts, and further the fairness and transparency of the securities markets.[53]

## B.     Article 21-2 and Its Application

39.     Article 21-2 provides a detailed framework for determining civil liability for companies making misleading statements in filed disclosures for securities traded in the secondary markets.

40.     Article 21-2 of the FIEA imposes civil liability on issuers for disclosures that contain a "false statement" about a material fact, "omits" a required material fact, or "omits a statement of material fact that is necessary to prevent it from being misleading."[54]

41.     Article 21-2 also establishes a method for calculating presumptive damages for those investors who purchased that stock during the one (1) year period prior to disclosure of sufficient facts to make clear the falsity or misleading nature of the earlier representation.[55]

---

[51]     *Id*. at 3.

[52]     *Id*.

[53]     *Id*.

[54]     FIEA, *supra* note 48, at Art.21-2(1)

[55]     *Id*. at Art.21-2(3).  Supreme Court, March 13, 2012, 1369 HANREI TAIMUZU 128 (2012)(the "Livedoor Case").

- 12 -

42.    It defines the damages as those available under Article 19,[56] and it provides a framework for the issuer to prove a lack of causation between the presumed damages and the false statement allowing for a reduction or disallowance of damages.[57]

43.    Article 21-2 also provides the court with discretion to determine reasonable damages where proof of the amount of loss not casually related to the false statement is extremely difficult.[58]

44.    Article 21-3 of the FIEA provides a defined period of prescription, similar to a statute of repose, of five (5) years from the disclosure of the documents. In addition, it provides a two (2) year statute of limitations, starting from the time the investor comes to know, or in the exercise of reasonable care should have come to know that the disclosure documents contained false or misleading statements.[59]

---

[56]    FIEA, *supra* note 48, at Art. 21-2(1).   Article 19 states that liability is calculated by deducting from the amount the claimant paid for the securities the market value of the securities at the time the claimant claims damages, or the disposal value of the securities if disposed of before the time of the claim.  *Id*. at Art. 19(1)(i)(ii).  Article 19(2) then deducts amounts proven by the defendant as "due to circumstances other than the decline in the value of the securities" arising from the false or misleading disclosure. *Id*. at Art. 19(2).

[57]    *Id*. at. Art. 21-2(5).

[58]    *Id*. at 21-2(6).

[59]    *Id*. at Art. 21-3.  In 2014, Japan amended Article 21-2 to allow not only investors who had purchased but also those who had disposed of securities during the period in which the false or misleading disclosures where available for review to sue for damages under the FIEA.  The 2014 amendments also eliminated strict liability for false or misleading disclosures.  It now permits the issuer to avoid civil liability by providing that the false or misleading statement was made without intent or negligence.  *See* Financial Services Agency, *Kinyuu Shouhin Torihiki Hou to no Ichibu wo Kaisei Suru Houritsu Ni Kakawaru Setsumei Shiryou* [Explanatory Materials Regarding the (2014 Law No.44) Revisions to a Portion of Financial Exchange and Instruments Act], available at http://www.fsa.go.jp/common/diet/186/01/setsumei.pdf.  Japanese law, however, provides that, as a general principle, legislation that restricts or impairs the rights or obligations of its citizens is not given retroactive effect.  *See, e.g., Joubun Keishiki, Shikou Jiki mo Kentou no Hitsuyou*, BUSINESS LAW JOURNAL 78 (June 2013).

- 13 -

45.     As discussed above, "[p]arliamentary legislation is the principal source of law in civil law countries,"[60] and, as a result, the FIEA controls the analysis.  At the same time, courts apply the law and, in doing so, articulate legal norms.  Japanese courts have done so on numerous occasions in resolving claims arising under the FIEA.

46.     There are currently thirty-six (36) written decisions addressing Article 21-2, spanning a period from 2008 through 2015.  They include three (3) decisions by Japan's Supreme Court.[61]  They also include judicial decisions relating to the $1.7 billion Olympus accounting scandal, which resulted in substantial news coverage in Japan, a third party investigation, and civil lawsuits by investors pursuant to Article 21-2.  Lower courts in Japan have, pursuant to Article 21-2, determined the relevant disclosure date and calculated damages arising from the false and misleading statements made in publically filed disclosure documents by Olympus.[62]

47.     Cases brought both prior to and after the 2006 amendment establishing a cause of action under Article 21-2 also commonly allege violations of Japan's negligence statute.[63]  There are, as a result, additional judicial decisions addressing issues of materiality, causation, and damages in the context of claims made pursuant to Japan's Civil Code.  These decisions include another Supreme Court decision that remains influential.[64]

---

[60]     O'Connor, *supra* note 11, at 11.

[61]     Supreme Court, March 13, 2012, 1369 HANREI TAIMUZU 128 (2012)(the "Livedoor Case"); Supreme Court, December 21, 2012, 1386 Hanrei Taimuzu 169 (2012)(the "Urban Corporation Case"); Supreme Court, March 26, 2013, remanded to the Tokyo High Court, March 26, 2014, (the "NIWS Company case").

[62]     Tokyo District Court, March 19, 2015, 1479 KINYUU SHOUJI HANREI 48 (December 1, 2015).

[63]     *Id*.

[64]     Supreme Court, September 13, 2011, 1361 HANREI TAIMUZU 103 (2011)("the Seibu Railway case").

- 14 -

48.     Japanese scholars have characterized this subject, civil liability for misleading statements in disclosure documents affecting securities transactions in the secondary markets, as one receiving increasing attention resulting in "numerous court decisions appearing."[65]  Commentary introducing recent opinions suggests that "the number of judicial decisions addressing false statements in disclosure documents for publically traded companies is not small."[66]

49.     A recent doctoral dissertation framed the issue more broadly and reported 101 judicial decisions during the period between 1990 and August 2014 relating to "securities disclosures", "false statements," and "claims for damages."[67]

50.     Apart from this growing body of reported judicial decisions, there is a growing body of administrative decisions that address claims of false or misleading statements in required securities disclosures.  The dissertation referenced above reports Japan's Securities and Exchange Surveillance Commission, an independent investigatory commission that is part of the Financial Services Agency, issuing eighty-eight (88) recommendations for sanctions arising from false or misleading disclosure documents during the period from April 2005 through July 2014.[68]

51.     Finally, there is a substantial and growing body of scholarship related to the application of the FIEA.  Representative treatises by well-known scholars of Japanese securities law include Professors Tomonobu Yamashita and Hideki Kanda's Outline of the Financial Instruments and Exchange Act (2010); the Reader on the New

---

[65]     Kawashima, *supra* note 44, at 5.

[66]     *See, e.g., Comment* [to Osaka District Court Opinion], July 21, 2015, 1476 KINYŪ SHOUJI HANREI 16, 23  (Oct. 15, 2015).

[67]     Yoshio Tomura, *Shouken Fujitsu Kaiji to Toushisha no Songai: Songai Gainnen no Saikousei* [Misleading Securities Disclosures and Investor Damages:  Rethinking the Concept of Damages 182 (2014), available at https://tsukuba.repo.nii.ac.jp/index.php?action=pages_view_main&activ e_action=repository_action_common_download&item_id=35701&item_no =1&attribute_id=17&file_no=1&page_id=13&block_id=83.

[68]     *Id.*

- 15 -

1  Financial Instruments and Exchange Act (2014) by Professor Ichirou Kawamoto et al.;

2  and the Introduction to the Financial Instruments and Exchange Act (2015) by

3  Professor Kondou et al.[69]  Issues relating to the FIEA are also addressed, in detail, in

4  law journal articles and reports.[70]

5      52.   This scholarship has increased relevance in a Civil Law country.  As set

6  out in the Federal Judicial Center's primer on the Civil Law, "[t]hough legal

7  scholarship is not a formal source of law, the 'doctrine' as developed by scholars is

8  highly valued in the civil-law tradition."[71]  Legal scholarship in Japan has similarly

9  been afforded significant weight.[72]  "The courts often accept the view of law

10  professors…. Judges study scholarly opinions extensively before making a

11  decision."[73]

12  **C.   Litigation Pending in Japan**

13      53.   I have reviewed the Complaint filed in Osaka alleging false and

14  misleading disclosures by Toshiba Corporation, a related press summary, and

15  Defendants' First Reply.  I have also reviewed information posted to a website

16  maintained by counsel for plaintiffs in the actions in Tokyo, Osaka, and Fukuoka.

17      54.   Based on review of the above information, my understanding is that the

18  named plaintiffs in the Osaka action include forty-five (45) individual investors, from

19  ────────────

20  [69]   Tomonobu Yamashita & Hideki Kanda, KINNYUU SHOUHIN TORIHIKI

21  HOU GAISETSU (2010); Ichirou Kawamoto et al., KINYUU SHOUHIN TORIHIKI HOU DOKU HON (2014); Mitsuo Kondou et al., KINYUU SHOUHIN TORIHIKI HOU NYUUMON (2015).

22  [70]   *See, e.g.,* Mitsuo Kondou, *Kinji no Saibanrei kara Mita Minji Sekinin no*

23  *Kadai to Tenbou* [Challenges and Prospects for Civil Liability from the Perspective of Recent Judicial Decisions], 1444 JURISUTO 34 (2012); Akira

24  Morita, *Shouken Sagi no Minji Sekinin — Nichibei wo Hikaku Shite* [Civil Liability for Securities Fraud — Comparing Japan and the United States],

25  KINYUU SHOUHIN TORIHIKI HOU KENNKYUUKAI 1 (2012).

26  [71]   Federal Judicial Center, Civil-Law Primer, *supra* note 17, at 29.

27  [72]   Oda, *supra* note 6, at 52.

28  [73]   *Id.*

1    areas including Osaka, Hyougo Prefecture, Kyoto, Hiroshima, and Nara.  Plaintiffs in

2    the Tokyo action include fifty (50) individuals, largely from the Tokyo area, but also

3    including residents from the Kantou area, Niigata Prefecture, Aichi Prefecture, and

4    Hokkaido.  I have found no reference suggesting inclusion of any plaintiffs from the

5    United States.

6         55.    The named defendants in the Osaka action are Toshiba Corporation, and

7    five (5) former officers of Toshiba Corporation, including Atsutoshi Nishida, Norio

8    Sasaki, Hisao Tanaka, Tomio Muraoka, and Makoto Kubo.

9         56.    Plaintiffs' claims in the Osaka Complaint against Toshiba Corporation

10   are based on Civil Code Article 709, Japan's negligence statute, and FIEA Article 21-

11   2(1).  Plaintiffs' claims against the former officers of Toshiba Corporation are based

12   on Civil Code Article 709 and FIEA Article 22(1), an article that extends the civil

13   liability scheme set out in Article 21 to officers of the company submitting the false or

14   misleading statement.

15        57.    Defendants' First Reply lists as defense counsel attorneys from the law

16   office of Mori, Hamada and Matsumoto.[74]  The declaration provided by Mr. Toru

17   Ishiguro on behalf of Toshiba Corporation in the present matter indicates that Mr.

18   Ishiguro is a partner at this firm.[75]

19   **V.    DISCOVERY ISSUES**

20        **A.    Depositions in the United States**

21        58.    Employers employing ten (10) or more persons are required to prepare

22   rules of employment, commonly called Work Rules, stating the terms and conditions

23   of employment.[76]  This document defines the contractual obligations of the employer

24

25   [74]    The address listed in the answer for the law firm is the Marunouchi
26   Park Building, 2-6-1 Marunouchi, Chiyoda-ku, Tokyo 100-8222, Japan.

27   [75]    *See* Ishiguro Declaration, *supra* note 34, at Para. 1.

28   [76]    Hideki T. Kano, JAPAN STAFF EMPLOYMENT LAW GUIDE 10 (2010).

- 17 -

and employee,[77] and the employer must submit this document to the local Employment Standards Inspection Office.[78]

59.     In the course of my work as general counsel for Temple University, Japan Campus, I reviewed a number of standard templates for Work Rules. These templates commonly include provisions that allow the company to direct the employee, as a common directive or order, to go on business trips, or change positions or workplace.[79]

60.     Because large Japanese companies commonly have business interests overseas, their Work Rules often separately address both overseas business trips and longer term overseas transfers.

61.     A standard provision defining the former permits the employer to order the employee, based on business necessity, to participate in an overseas business trip of less than three months. That three-month period may be extended if there is a business necessity. Employees are not permitted to refuse an assignment of less than three months absent a justifiable reason.[80]

62.     As a result, standard terms and conditions for work in Japan commonly permit a company to direct an employee to travel overseas. This would suggest that, absent other privilege or protection, an employer could direct an employee to travel overseas for the purposes of sitting for a deposition or participating in litigation.[81]

---

[77]     *Id*.

[78]     *Id*.

[79]     *See, e.g.*, Nobunori Ishizaki, SHUUGYOU KISOKU NO HOURITSU JITSUMU [The Law and Practice of Work Rules] 662-663 (2010).

[80]     *Id*.

[81]     *See* Yaskawa Electric. Corp. v. Kollmorgen Corp., 201 F.R.D. 443, 444 (ND Ill. 2001).

1

**B.     Depositions in Japan**

2      63.     Article 17 of the United States – Japan Consular Convention authorizes

3   U.S. consular officers to take depositions in Japan.[82]  They must be presided over by a

4   U.S. consular officer and taken, pursuant to a U.S. court order or commission, of a

5   willing or voluntary witness.[83]   Non-Japanese participants traveling to Japan are

6   required to obtain a deposition visa.

7      64.     Voluntary depositions on written questions, pursuant to Fed. R. Civ. P.

8   31, may also be taken in Japan, after coordination with the U.S. Embassy or Consulate

9   General.[84]

10      65.     Depositions for the purposes of litigation in the United States are

11   commonly taken in Japan.  An ABA publication addressing transnational discovery in

12   Japan states: "[c]onsular officials of the United States take depositions so frequently

13   that applicants should anticipate scheduling delays."[85]

14      66.     The United States Embassy in Tokyo addresses these requests routinely

15   and provides information regarding the process on its website.[86]   There are three

16   depositions rooms available: one in Tokyo and two in Osaka.[87]

17

18

19

---

20   [82]     Consular Convention Between the United States and Japan, 518
21   U.N.T.S. 179 (1963), available at
     http://www.mofa.go.jp/mofaj/gaiko/treaty/pdfs/A-S39-695_1.pdf.

22   [83]     Embassy of the United States, Tokyo, Japan, Depositions in Japan,
23   available at http://japan.usembassy.gov/e/acs/tacs-7116.html.

24   [84]     *Id*.

25   [85]     ABA SECTION OF ANTITRUST LAW, OBTAINING DISCOVERY ABROAD 176
     (2005).

26   [86]     Embassy of the United States, Tokyo, Japan, Depositions in Japan,
27   available at http://japan.usembassy.gov/e/acs/tacs-7116.html.

28   [87]     *Id*.

- 19 -

**C.     Limitations on Discovery in Japan**

67.     Civil litigation in Japan presents hurdles not found in the United States. "[T]here is no pre-trial discovery in civil law systems.  All evidence is produced during the trial phase either voluntarily as proof of the party's own case or at the direction of the judge."[88]

68.     Practitioners suggest "there is virtually no discovery in Japan.  The primary tool for gaining information is a request for clarification, through which a party or the court can ask for particular documents or answers to particular questions.  However, because the requests are answered by lawyers, they typically yield little useful information."[89]

Signed and attested to subject to the penalties of perjury this ___ day of March 2016 at _____, _____.

Andrew M. Pardieck, J.D., S.J.D.

_____

[88]     Gregory F. Hauser, 17 INT'L LAW PRACTICUM 129, 136 (2004).

[89]     Steven Comer & Chie Yakura, *Litigation in Japan*, THE AMERICAN LAWYER 23 (Oct. 2014).   Code of Civil Procedure Article 220 defines instances when "the holder of the document may not refuse to submit the document."  Article 221 sets out a means to petition for an order requiring a party to submit the document, and Article 222 defines the procedure for identifying the document to be submitted.  Article 163 provides the basis for an "inquiry to opponent" where a party "may request the opponent to make a response by means of a document with regard to matters necessary for preparing allegations or proof."  Code of Civil Procedure, *supra* note 24.

- 20 -

# EXHIBIT A

# ANDREW M. PARDIECK
**Principal, Japan-America Consulting, L.L.C.**
Email: andrew@japanamericaconsulting.com

## Academic Background

**Hokkaido University School of Law**                                  法学博士

Ph.D./S.J.D. equivalent; Japanese Ministry of Education Scholarship Recipient; Itoh Scholarship Foundation Recipient.

**Indiana University School of Law**                                      **J.D.**
*Magna Cum Laude*; Order of the Coif; Dean's List: Admitted to the Indiana Bar.

**Harvard College**                                                       **A.B.**
*Magna Cum Laude*; Dean's List; Harvard College Scholarship Recipient.

## Current Employment

**Southern Illinois University School of Law**          **Assistant Professor of Law**
Teach Comparative Law, with a focus on Japan; Civil Procedure; Remedies; and Electronic Discovery.  Research and write on Japanese law.

**Japan-America Consulting, L.L.C.**                                **Principal**
Consult on Japanese regulatory and legal issues.

## Prior Work Experience

**Temple University, Japan Campus**                         **General Counsel**
In-house counsel with responsibilities including negotiating and drafting contracts; compliance with corporate, education, employment and immigration law; and risk management.

**Temple University Beasley School of Law**          **Assistant Professor of Law**
Taught Introduction to Japanese Law; Comparative Corporate Law; Remedies; and Torts at Temple University, Japan Campus.

**The Pardieck Law Firm**                                              **Attorney**
Civil litigation practice focusing on products liability, with responsibility for pleadings; discovery, including electronic discovery; motion practice; and appeals.

**University of Washington School of Law**        **Visiting Scholar and Part-time Lecturer**
Taught Japanese Law and researched and wrote on the consumer finance industry in Japan.

**Indiana University School of Law**                      **Visiting Assistant Professor**
Taught Corporations and Securities Regulation and participated in research project commissioned by the Japanese Prime Minister's Office.

**Hokkaido University School of Law**                                        **Lecturer**
Taught Introduction to Japanese Law and Legal Research; assisted with Negotiations course; researched and published on U.S. and Japanese securities law.

# English Language Publications

**Books:**        Co-author, CONTRACT LAW IN JAPAN (forthcoming), scheduled to be published as part of Kluwer International Law's International Encyclopaedia of Laws series.

**Articles:**        *Executing Contracts in Japan,* 40 ZEITSCHRIFT FÜR JAPANISCHES RECHT [J. JAPANESE L.](2015);

*Layers of the Law:  A Look at the Role of Law in Japan Today,* 22 PAC. RIM L. & POLICY J. 599 (2013);

*Japan and the Moneylenders — Activist Courts and Substantive Justice,* 17 PAC. RIM L. & POLICY J. 529 (2008)(lead article);

*Kegs, Crude and Commodities Law: On Why it is Time to Re-examine the Suitability Doctrine under U.S. Commodities Law,* 7 NEVADA L. J. 301 (2007);

*The Formation and Transformation of Securities Law in Japan: From the Bubble to the Big Bang,* 19 UCLA PAC. BASIN L.J. 1 (2001) (lead article);

*Virtuous Ways and Beautiful Customs: The Role of Alternative Dispute Resolution In Japan*, 11 TEMPLE INT'L & COMP. L.J. 31 (1997).  Reprinted, in part, in INTERNATIONAL BUSINESS LAW (2d ed. 2005);

*Foreign Legal Consultants: The Changing Role of the Lawyer in a Global Economy,* 3 IND. J. GLOBAL LEGAL STUD. 457 (1996).

**Essays:**   *Common Expectations*, THE LAW TEACHER 34 (Spring 2014).

**Translations:** *Kou v. Japan, 51 Saikō Saibansho Minji Hanreishu* (9) 3925 (1995) [SUPREME COURT REPORTER OF CIVIL CASES], published in THE JAPANESE ANNUAL OF INTERNATIONAL LAW, NO. 41 (1999).

**Editing:**   Deputy Editor of the ABA INTERNATIONAL  LAW YEAR IN REVIEW 2012


# Japanese Language Publications


**Books:**   証券取引勧誘の法規制「開示義務」「説明義務」を超えて[REGULATING THE SOLICITATION OF SECURITIES TRANSACTIONS: BEYOND DISCLOSURE AND THE DUTY TO EXPLAIN] (Commercial Law Centre, Inc. 2001) (ISBN-10: 4785709332)(ISBN-13: 978-4785709334).  Reviewed by The Legal Research Foundation of the Japanese Federation of Japanese Bar Associations in HŌMU SOKUHŌ, June 20, 2001.

**Articles:**   アメリカ商品先物取引法の発展と法理 [The Development and Legal Principles of U.S. Commodities Futures Transaction Law], 24 SAKIMONO TORIHIKI HIGAI KENKYŪ 5 (2005);

変額保険に関する最高裁の二判決 [A Study of Two Supreme Court Opinions Concerning Variable Life Insurance], 990 HANREI TAIMUZU 52 (1999).

**Essays:**   似ている問題・似ている弁護士たち[Similar  Problems  and  Similar  Attorneys], 63 SHŌHISHA HŌ NYŪSU 133 (2005);

アメリカの訴訟社会—増幅されている誤解[American  Litigiousness:  Amplified Misunderstandings], 26 KOKUSAI SHŌJI HŌ RONSHŪ 566 (1998).


# Invited Lectures & Research

Invited presentation on the 2015 amendments to the Federal Rules of Civil Procedure, Southern Illinois Inns of Court, DuQuoin, IL, February 18, 2016.

Invited presentation on cost-shifting under the Federal Rules of Civil Procedure, Southeastern Association of Law Schools Conference, Boca Raton, FL, August 1,

2015.

Invited presentation on eDiscovery for small and medium-sized cases, SIU School of Law, Jackson & Williamson County Bar Associations Joint CLE Conference, Carbondale, IL, May 1, 2015.

Invited lecture on the proposed amendments to the Federal Rules of Civil Procedure and electronic discovery at the Hokkaido University School of Law, Sapporo, Japan.  July 18, 2014.

Invited presentation on Japanese contract law at the Contract Law Reform in Asia symposium sponsored by the Centre for Asian and Pacific Law at the University of Sydney, December 6, 2013.

Invited presentation on the role of law in Japan at the Festschrift Conference in Honor of Professor John O. Haley, University of Washington School of Law, Seattle. October 19, 2012.

Invited lecture on the regulation of structured products in the U.S. at national conference on securities law, Nagano, Japan.  July 23, 2010;

Invited lecture on class actions in the U.S. sponsored by the Kyoto Bar Association, Kyoto, Japan.  July 30, 2007;

Invited lecture on fiduciary duties at national conference on securities law, Osaka, Japan.  July 27, 2007;

Invited lecture on causation and damages under U.S. securities law, sponsored by the Japanese Federation of Bar Associations, Tokyo, Japan.  July 26, 2007;

Invited lecture on communicating with juries for the Chiba Prosecutor's Office, Chiba-City, Japan. July 24, 2007;

Invited lecture on suitability issues and U.S. commodities law at Hokkaido University School of Law, Sapporo, Japan.  June 30, 2006;

Coordinated research on U.S. disclosure requirements in consumer contracts for the Comparative Law Center, Kyoto University, commissioned by the Prime Minister's Office, Japan.  Spring, 2006;

Invited lecture on issues in U.S. products liability law for Hokkaido University School of Law, Sapporo, Japan.  November 19, 2004;

4

Invited lecture on disclosure requirements in U.S. securities law sponsored by the
Japanese Federation of Bar Associations, Tokyo, Japan.  November 17, 2004;

Invited lecture on the structure of U.S. securities law sponsored by the Osaka Bar
Association, Osaka, Japan.  November 15, 2004;

Invited lecture on issues in U.S. products liability law sponsored by the Osaka Bar
Association, Osaka, Japan.  November 15, 2004;

Lecturer and panelist on suitability requirements under U.S. securities and commodities
law at national conference on securities and commodities law, Tottori City,
Japan.  November 12-13, 2004;

Lecture on disclosure requirements under U.S. and Japanese securities law at Hokkaido
University School of Law, Sapporo Japan.  September 24, 1999;

Lecture on disclosure requirements under Japanese insurance law at Hokkaido
University School of Law, Sapporo, Japan.  October 23, 1998.

CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 21, 2016.

s/Dennis J. Herman
DENNIS J. HERMAN

ROBBINS GELLER RUDMAN
 & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  dennish@rgrdlaw.com

## Mailing Information for a Case  2:15-cv-04194-DDP-JC Mark Stoyas v. Toshiba Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jaime M Crowe**
  jcrowe@whitecase.com

- **Christopher M Curran**
  ccurran@whitecase.com

- **Dennis J Herman**
  dennish@rgrdlaw.com,jgeorge@rgrdlaw.com

- **Bryan A Merryman**
  bmerryman@whitecase.com,cgomez@whitecase.com,jdisanti@whitecase.com,mco@whitecase.com,taylor.wright@whitecase.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,Dennish@rgrdlaw.com,willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Owen C Pell**
  opell@whitecase.com

- **Willow E Radcliffe**
  willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,kirstenb@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)