1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  DENNIS J. HERMAN (220163)
   WILLOW E. RADCLIFFE (200087)
3  JOHN H. GEORGE (292332)
   Post Montgomery Center
4  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
5  Telephone:  415/288-4545
   415/288-4534 (fax)
6  dennish@rgrdlaw.com
   willowr@rgrdlaw.com
7  jgeorge@rgrdlaw.com

8  Lead Counsel for Plaintiffs

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11  MARK STOYAS and NEW            )  Case No. 2:15-cv-04194-DDP(JCx)
    ENGLAND TEAMSTERS &            )
12  TRUCKING INDUSTRY PENSION      )  CLASS ACTION
    FUND,                          )
13                                 )  PLAINTIFFS' OPPOSITION TO
                       Plaintiffs, )  MOTION TO DISMISS SECOND
14                                 )  AMENDED COMPLAINT
            and                    )
15                                 )
    AUTOMOTIVE INDUSTRIES          )
16  PENSION TRUST FUND, Individually )
    and on Behalf of All Others Similarly )
17  Situated,                      )
                                   )
18                 Lead Plaintiff, )
                                   )
19          vs.                    )
                                   )
20  TOSHIBA CORPORATION,           )
                                   )
21                     Defendant.  )
                                   )
22  ─────────────────────────────

23

24

25

26

27

28

4830-8876-6379.v1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................ 1

II.   ARGUMENT ..................................................................... 2

    A.   Toshiba Has Not Met Its Burden of Showing Grounds for Dismissal of the Japanese Law Claims Against It ............................ 2

    B.   Comity Does Not Support Dismissal of the U.S. Law Claims ............ 6

    C.   The Complaint Correctly Alleges – and Toshiba Has Previously Conceded – that AIPTF Purchased Its ADRs in the United States ................................................................................. 9

    D.   Toshiba's Fraud Was Committed In Connection With Transactions in TOSYY and TOSBF .................................................. 14

        1.   The Facts Alleged Meet the In Connection With Requirement ............................................................................... 15

        2.   The In Connection With Requirement Does Not Require Toshiba's Involvement, But Even if It Did the Facts Alleged Would Suffice ............................................................. 21

III.   CONCLUSION ................................................................ 25

4830-8876-6379.v1

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Abrahamson v. Fleschner,*
5
   568 F.2d 862 (2d Cir. 1977) ................................................................ 16

6

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
7
   677 F.3d 60 (2d Cir. 2012) ..........................................10, 11, 12, 13

8

*Alaniz v. City of Los Angeles,*
   2014 U.S. Dist. LEXIS 116110 (C.D. Cal. May 21, 2014)...................2
9

10

*Ambassador Hotel Co. v. Wei-Chuan Inv.,*
   189 F.3d 1017 (9th Cir. 1999).......................................14, 16, 19, 20
11

12

*Arst v. Stifel, Nicolaus & Co.,*
   86 F.3d 973 (10th Cir. 1996) .......................................................... 14, 16

13

*Ashcroft v. Iqbal,*
14
   556 U.S. 662 (2009) ....................................................................... 11, 23

15

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna*
16
   *JSC,*
   2 F. Supp. 3d 550 (S.D.N.Y. 2014) ....................................................11
17

18

*Atonio v. Wards Cove Packing Co.,*
   810 F.2d 1477 (9th Cir. 1987) (*en banc*).............................................19
19

20

*Banco Safra, S.A. – Cayman Is. Branch v. Samarco Mineracano S.A.,*
   2019 U.S. Dist. LEXIS 101561 (S.D.N.Y. June 18, 2019)................12

21

*Banks v. N. Tr. Corp.,*
22
   929 F.3d 1046 (9th Cir. 2019) ........................................................... 16

23

*Basic v. Levinson,*
24
   485 U.S. 224 (1988) ........................................................................ 18

25

*Bigio v. Coca-Cola Co.,*
26
   448 F.3d 176 (2d Cir. 2006) ............................................................... 4

27

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975) ........................................................................ 16
28

- ii -

**Page**

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011) .................................................................. 3, 5

*City Nat'l Bank of Fort Smith, Ark. v. Vanderboom*,
  422 F.2d 221 (8th Cir. 1970) ...................................................................... 14

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ...................................................................................... 3

*Cruz v. United States*,
  387 F. Supp. 2d 1057 (N.D. Cal. 2005) ........................................................ 3

*Daniel v Nat'l Park Serv.*,
  891 F.3d 762, 767 (9th Cir. 2018) .............................................................. 13

*De Fontbrune v. Wofsy*,
  838 F.3d 992 (9th Cir. 2016) ........................................................................ 4

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ...................................................................................... 7

*Fleming v. Charles Schwab Corp.*,
  878 F.3d 1146 (9th Cir. 2017) .............................................................. 14, 16

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
  704 F.3d 1110 (9th Cir. 2013) .............................................................. 15, 16

*Fry v. UAL Corp.*,
  84 F.3d 936 (7th Cir. 1996) ........................................................................ 21

*Jett v. Sunderman*,
  840 F.2d 1487 (9th Cir. 1988)
  *abrogated on other grounds by*
  *Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ...................................................................... 16

*Giunta v. Dingman*,
  893 F.3d 73 (2d Cir. 2018) .......................................................................... 11

4830-8876-6379.v1

**Page**

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ............................................................................ 23

*Gurary v. Winehouse*,
   190 F.3d 37 (2d Cir. 1999) ............................................................................... 16

*Gutierrez v. Advanced Med. Optics, Inc.*,
   640 F.3d 1025 (9th Cir. 2011) ............................................................................ 3

*HECNY Transp. v. H. Cotler Co.*,
   1994 U.S. Dist. LEXIS 6201 (S.D.N.Y. May 12, 1994) ................................... 23

*Howden N. Am. Inc. v. ACE Prop. & Cas. Ins. Co.*,
   875 F. Supp. 2d 478 (W.D. Pa. 2012) ................................................................ 5

*In re Ames Dep't. Stores Inc. Stock Litig.*,
   991 F.2d 953 (2d Cir. 1993) ............................................................................. 18

*In re Packaged Seafood Prods. Antitrust Litig.*,
   277 F. Supp. 3d 1167 (S.D. Cal. 2017) ......................................................... 7, 10

*In re Tezos Sec. Litig.*,
   2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) .................................................... 11

*JDC, Inc. v. Interstate Hotels & Resorts*,
   2010 WL 11596123 (C.D. Cal. Oct. 25, 2010) ................................................. 23

*Levine v. Diamanthuset, Inc.*,
   950 F.2d 1478 (9th Cir. 1991) ...................................................................... 15, 19

*Liebhard v. Square D Co.*,
   1992 U.S. Dist. LEXIS 15582 (N.D. Ill. Oct. 14, 1992) ................................... 22

*LinkCo, Inc. v. Nichimen Corp.*,
   164 F. Supp. 2d 203 (D. Mass. 2001) ................................................................. 4

*Loginovskaya v. Batratchenko*,
   764 F.3d 266 (2d Cir. 2014) ........................................................................ 12, 13

4830-8876-6379.v1

**Page**

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ............................................................................. 9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ............................................................................................... 14

*Morrison v. Nat'l Austl. Bank, Ltd.*,
561 U.S. 247 (2010) .......................................................................................*passim*

*Mujica v. AirScan Inc.*,
771 F.3d 580 (9th Cir. 2014) ............................................................................ 3, 4

*Norris v. Wirtz*,
719 F.2d 256 (7th Cir. 1983) .............................................................................. 17

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
135 F. Supp. 3d 1059 (N.D. Cal. 2015) ............................................................. 23

*O'Brien v. Cont'l Ill. Nat'l Bank & Tr. Co.*,
593 F.2d 54 (7th Cir. 1979) ................................................................................ 16

*Ohashi v. Verit Indus.*,
536 F.2d 849 (9th Cir. 1976) .............................................................................. 16

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
630 F.3d 866 (9th Cir. 2010) ........................................................................ 16, 19

*Roberts v. Peat, Marwick, Mitchell & Co.*,
857 F.2d 646 (9th Cir. 1988) ............................................................... 14, 16, 18

*Rocky Mountain Farmers Union v. Corey*,
913 F.3d 940 (9th Cir. 2019) ............................................................................... 2

*Sakamoto v. Duty Free Shoppers, Ltd.*,
764 F.2d 1285 (9th Cir. 1985) ............................................................................ 17

*Santiago v. Amdocs, Inc.*,
2011 U.S. Dist. LEXIS 36111 (N.D. Cal. Apr. 2, 2011) ..................................... 9

4830-8876-6379.v1

**Page**

*SEC v. Compania Internacional Financiera S.A.*,
 2011 U.S. Dist. LEXIS 83424 (S.D.N.Y. July 29, 2011) ................................. 21

*SEC v. Jakubowski*,
 150 F.3d 675 (7th Cir. 1998) ............................................................. 14

*SEC v. Rana Research*,
 8 F.3d 1358 (9th Cir. 1993) .......................................................*passim*

*SEC v. Sabrdaran*,
 2015 U.S. Dist. LEXIS 25051 (N.D. Cal. Mar. 2, 2015) .................................. 22

*SEC v. Scoville*,
 913 F.3d 1204 (10th Cir. 2019) ......................................................... 12

*SEC v. Tourre*,
 2012 U.S. Dist. LEXIS 165214 (S.D.N.Y. Nov. 19, 2012) ............................... 21

*Shivers v. AMERCO*,
 670 F.2d 826 (9th Cir. 1982) ........................................................... 16

*Stoyas v. Toshiba Corp.*,
 191 F. Supp. 3d 1080 (C.D. Cal. 2016)...............................................7, 9

*Stoyas v. Toshiba Corp.*,
 896 F.3d 933 (9th Cir. 2018)
 *cert. denied*, _U.S._, 139 S. Ct. 2766 (2019) ..............................*passim*

*Takiguchi v. MRI Int'l, Inc.*,
 47 F. Supp. 3d 1100 (D. Nev. 2014) .................................................... 13

*Taylor v. Tesco Corp.*,
 754 F. Supp. 2d 840 (E.D. La. 2010) .................................................... 3

*Teece v. Kuwait Fin. House*,
 667 F. App'x 931 (9th Cir. 2016)........................................................ 4

*Tolan v. Computervision Corp.*,
 696 F. Supp. 771 (D. Mass. 1988)....................................................... 22

1
2                                                                          **Page**
3
4   *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund,*
       No. 18-486, 2018 WL 5802391 (U.S. Nov. 2, 2018).........................................5
5
    *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund,*
6      No. 18-486, 2019 WL 2185128 (U.S. May 20, 2019) ...................................8, 10
7
    *U.S. Mortg., Inc. v. Saxton,*
8      494 F.3d 833 (9th Cir. 2007)
       *abrogated on other grounds by*
9      *Proctor v. Vishay Intertechnology Inc.,*
       584 F.3d 1208 (9th Cir. 2009).....................................................................15, 16
10
11  *United States v. Martoma,*
       2013 U.S. Dist. LEXIS 176998 (S.D.N.Y. Dec. 17, 2013)................................13
12
13  *United States v. Vilar,*
       729 F.3d 62 (2d Cir. 2013) ................................................................................12
14
15  *Volodarskiy v. Delta Air Lines, Inc.,*
       987 F. Supp. 2d 784 (N.D. Ill. 2013)....................................................................9
16
17  *Wu v. Stomber,*
       883 F. Supp. 2d 233 (D.D.C. 2012) ...................................................................13
18
19  *Zelman v. JDS Uniphase Corp.,*
       376 F. Supp. 2d 956 (N.D. Cal. 2005)................................................................21
20  **STATUTES, RULES AND REGULATIONS**
21
    Federal Rules of Civil Procedure
22     Rule 12(g)..............................................................................................................6
23     Rule 12(g)(2) ......................................................................................................10
       Rule 23...................................................................................................................9
24     Rule 44.1................................................................................................................4
25
26
27
28

4830-8876-6379.v1

1     Lead Plaintiff Automotive Industries Pension Trust Fund ("AIPTF") hereby

2  responds as follows to Toshiba Corporation's ("Toshiba" or the "Company") motion

3  to dismiss (ECF No. 79) ("Mot.") the Second Amended Complaint (ECF No. 75)

4  ("SAC" or "complaint"):[1]

5  **I.    INTRODUCTION**

6     Consistent with *Morrison v. Nat'l Austl. Bank, Ltd.*, 561 U.S. 247 (2010) and

7  *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018), *cert. denied*, _U.S._, 139 S.

8  Ct. 2766 (2019), the SAC pleads claims arising from the purchase of TOSYY ADRs[2]

9  and TOSBF common stock sold on the Over-the-Counter ("OTC") Market in the

10  United States under §§10(b) and 20(a) of the U.S. Securities & Exchange Act of

11  1934 ("Exchange Act"), and claims arising from the purchase of Toshiba common

12  stock outside of the United States under Article 21-2 of the Japan Financial

13  Instruments & Exchange Act ("JFIEA").   ¶¶334,362-376; *see Morrison*, 561 U.S. at

14  269-70; *Stoyas*, 896 F.3d at 944.   Plaintiffs' allegations satisfy each and every

15  element of these claims and meet every other requirement necessary for this case to

16  be heard by this Court.

17     Toshiba's arguments for dismissal ignore or mischaracterize the factual

18  allegations of the complaint, the controlling legal authorities, or both.  Toshiba again

19  invites error by asking this Court to: (i) reaffirm its prior dismissal of the JFIEA

20  claims without further inquiry or analysis; (ii) dismiss, out of deference to purported

21  foreign interests, U.S. law claims based on transactions that it has admitted took

22  place in the U.S.; and (iii) find that Toshiba's fraudulent publication of admittedly

23  false financial statements was not in connection with transactions in TOSBF and

24

---

25  [1]   Citations to the complaint are in the form "¶¶__." Citations to the complaint exhibits are in the form "Ex.__." All citations and footnotes omitted and emphasis

26  added unless otherwise indicated. All capitalized terms not defined herein shall have the same meaning as in the complaint.

27  [2]   For ease of reference, American Depositary Shares and American Depositary

28  Receipts are referred to herein as ADRs. *See Stoyas*, 896 F.3d at 940 n.5.

TOSYY securities, even though: (a) it is undisputed that the fraud inflated the price of TOSYY and TOSBF, thereby connecting transactions in those securities to the alleged fraud; and (b) the well-documented industry practices pled in the complaint establish a strong inference that Toshiba's consent was sought and obtained before those securities were offered for sale in America.

Toshiba's arguments for dismissal are unfounded and incorrect.  Its motion to dismiss must be denied.

## II.   ARGUMENT

### A.   Toshiba Has Not Met Its Burden of Showing Grounds for Dismissal of the Japanese Law Claims Against It

Toshiba's assertion that the Court may simply refuse to reconsider its prior decision dismissing the Japanese law claims under the doctrines of comity and *forum non conveniens* is contrary to the Ninth Circuit's mandate.  The clear import of the Ninth Circuit's ruling is a direction to this Court to reconsider that dismissal in light of the reversal of the *Morrison* issue.  *Stoyas*, 896 F.3d at 952 n.25 (declining to address dismissal "in the first instance" because it was predicated on the Court's incorrect dismissal of the U.S. law claims).[3]  Yet Toshiba does not even make the barest attempt to address the prior ruling in light of the Ninth Circuit opinion, much less to explain why dismissal "remains appropriate" in light of the viability of the Exchange Act claims.  It does not.

As an initial matter, Toshiba's attempt to incorporate its prior briefs and expert reports by reference is improper because: (i) it attempts to circumvent the local rules of this Court, and (ii) there is no showing that the facts that Toshiba relied on more than three years ago still exist.[4]  Toshiba's conclusory argument resting on stale

---

[3]   Toshiba's reliance on the "law of the case" doctrine is misplaced.  Unlike *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019), "the controlling substance at the crux of the case" *has* changed as a result of the Ninth Circuit's ruling.  So have the facts.  ¶157(c).

[4]   C.D. Cal. L.R. 11-6; *see, e.g.*, *Alaniz v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 116110, at *14 n.5 (C.D. Cal. May 21, 2014) (declarations that lack "specific,

4830-8876-6379.v1

1    briefs and expert reports fails to satisfy its substantial burden of demonstrating
2    sufficient grounds for dismissal under either comity or *forum non conveniens*.  *E.g.*,
3    *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1236 (9th Cir. 2011); *Cruz*
4    *v. United States*, 387 F. Supp. 2d 1057, 1069 (N.D. Cal. 2005).  It has failed to
5    demonstrate the extraordinary circumstances that are necessary to justify dismissal
6    of the JFIEA claims on those grounds.  *Colo. River Water Conservation Dist. v.*
7    *United States*, 424 U.S. 800, 813 (1976) (comity "is an extraordinary and narrow
8    exception"); *Carijano*, 643 F.3d at 1224 (because of its "drastic" nature, "*forum non*
9    *conveniens* [is] 'an exceptional tool to be employed sparingly'").[5]

10         First, with respect to comity, the Ninth Circuit's ruling confirms that plaintiffs
11   struck the proper balance in asserting claims arising from domestic transactions
12   under U.S. law and those arising from foreign transactions under Japanese law.
13   *Stoyas*, 896 F.3d at 944 ("The transactional test the *Morrison* court adopted . . .
14   avoided 'the interference with foreign securities regulation' that application of the
15   Exchange Act to foreign transactions would produce.").  The "adjudicatory comity"
16   doctrine is concerned with avoiding interference with pending proceedings in Japan.
17   *Mujica v. AirScan Inc.*, 771 F.3d 580, 599 (9th Cir. 2014).  That doctrine is
18   inapplicable here.  Toshiba has not – and cannot – identify **any** regulatory, judicial
19   or investigatory proceeding in Japan that has been or will be impacted by this Court's
20   consideration of the JFIEA claims, because Japan's civil law system assures that the
21
22

23   ───────────────────────
     current information" are not probative of issues before the court); *Gutierrez v.*
24   *Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1030-31 (9th Cir. 2011) (events
     occurring after convenience motion is filed must be considered); *Taylor v. Tesco*
25   *Corp.*, 754 F. Supp. 2d 840, 844 n.3 (E.D. La. 2010) ("'status of the case when a
     *forum non conveniens* motion *is decided* is most significant'") (emphasis in
26   original).

27   [5]  *See also e.g.*, *Colo. River*, 424 U.S. at 813-14, 817 (court has "unflagging
     obligation" to hear cases properly before it); *Stoyas*, 896 F.3d at 938 (recognizing
28   that Court has diversity jurisdiction over JFIEA claims).

                                        - 3 -

1  resolution of this action will not impact any other case or hinder the development of

2  the law in Japan.[6]

3    While Toshiba previously asserted that Japanese law was "unsettled" and

4  would be difficult to apply by this Court, it neglects to call this Court's attention to

5  intervening decisions of the Tokyo Supreme Court interpreting the JFIEA, including

6  two that address the calculation of damages (and confirm, contrary to the prior

7  suggestions of Toshiba's experts, that damages under the JFIEA are measured in the

8  same way as damages under the Exchange Act).[7]  Finally, that no arm of the Japanese

9  government has ***ever*** objected to this Court's consideration of the ***JFIEA*** claims

10  further underscores the lack of any legitimate comity concerns.[8]  Toshiba's reliance

11  elsewhere in its brief on the 1½-page *amicus* brief to the Supreme Court by the

12  Ministry of Economy, Trade and Industry of Japan has no bearing here, as that filing

13  was directed at the application of the Exchange Act, not the JFIEA.  Brief of the

14  Ministry of Economy, Trade and Industry of Japan as Amicus Curiae in Support of

15

16

___

17  [6]  ¶¶373-376; *see, e.g.*, *LinkCo, Inc. v. Nichimen Corp.*, 164 F. Supp. 2d 203, 213
18  (D. Mass. 2001).  Japanese law is not difficult to apply.  *De Fontbrune v. Wofsy*, 838
   F.3d 992, 994 (9th Cir. 2016); *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir.
   2006); s*ee also* Fed. R. Civ. P. 44.1.

19  [7]  *See, e.g.*, Japan Supreme Court, Oct. 11, 2018, Case (Ju) No. 1496, 72 Minshu 5
20  (Japan) (court may reduce damages for price declines not caused by the alleged
   fraud) https://tinyurl.com/72Minshu5.  Toshiba's experts previously claimed there
21  were only two decisions of the Tokyo Supreme Court interpreting the JFIEA.  Now
   there are at least four.  Additional guidance can be found in cases where the Supreme
22  Court rejected discretionary appeals, affirming lower court decisions interpreting the
   Act.  *See, e.g.*, Japan Supreme Court, Aug. 23, 2018, Case (o) No. 164, Case (ju)
23  No. 204 (denying review of decision holding, *inter alia*, that JFIEA damages are
   generally calculated as the difference in market price before and after public
24  disclosure of fraud).  According to the Japanese Securities Research Institute, as of
   Feb. 1, 2017, there were 58 published court decisions in Japan addressing an issuer's
25  liability for misrepresentations in its disclosures.

26  [8]  *See, e.g.*, *Mujica*, 771 F.3d at 598 (comity is primarily concerned with
   "maintaining amicable working relationships between nations"); *Teece v. Kuwait
27  Fin. House*, 667 F. App'x 931, 932 (9th Cir. 2016) ("Teece has not identified any
   conflict between the United States and New Zealand or Bahraini law that could serve
28  to justify abstention.").

- 4 -

1   Petitioner, *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund*, No. 18-486, 2018 WL

2   5802391 (U.S. Nov. 2, 2018); *see also infra* at 7-8.

3        Second, Toshiba ignores that the balancing of the *forum non conveniens*

4   factors is, as the Ninth Circuit implicitly recognized, significantly altered by the

5   viability of the Exchange Act claims.  In particular, there will be substantial overlap

6   between the evidence of the JFIEA violations and the evidence that will be used to

7   prove the Exchange Act violations because the same facts give rise to both claims.

8   Thus, there will be no inconvenience to the parties in litigating the JFIEA claims

9   together with the Exchange Act claims here.[9]  Even if there is some evidence specific

10  to the JFIEA claims (Toshiba does not identify any), Toshiba fails to discharge its

11  burden of demonstrating that it would be disproportionately difficult to obtain it.

12  Toshiba does not identify a single foreign witness who is currently unwilling to

13  testify nor explain why their testimony is necessary to its defense of the action.[10]  For

14  good reason – Toshiba has no need for such testimony, as illustrated by the fact that

15  it has yet to introduce testimony from any witness on any issue of liability in any

16  case pending in Japan, including those that have progressed to a point where such

17  testimony would customarily have been offered.[11]  ¶157(c).  The reason for this, too,

18  is clear: Toshiba has no legitimate fact-based defense to liability under the JFIEA.

19  Toshiba has acknowledged that it has "validated the facts" contained in the

20  investigative reports described in the complaint (¶123), thereby admitting that it

21  deliberately overstated its earnings every quarter for six years in order to meet

22

23  [9]   *E.g., Howden N. Am. Inc. v. ACE Prop. & Cas. Ins. Co.*, 875 F. Supp. 2d 478,
484-85 (W.D. Pa. 2012) ("Even if the court were to sever HDI-Gerling from the
24  2009 Litigation, it would not accomplish any efficiency considering that the court
would still have to decide the same issues with respect to HNA's claims against other
25  defendants . . . .").

26  [10]  *Carijano*, 643 F.3d at 1231 ("When no witness' unwillingness has been alleged
or shown, a district court should not attach much weight to the compulsory process
27  factor.").

28  [11]  Toshiba's Motion does not dispute, or even address, this allegation.

- 5 -

forecast results and prevent stock price declines. ¶¶7,118-124,140,150,156,273.  As a result, the principal issues of dispute in Japan revolve around issues of damages which (as here) will be decided primarily through expert testimony and analysis, not the testimony of percipient witnesses.

To the extent witness testimony is necessary, it will center around activities that took place in the United States, including evidence of the impairment of Toshiba's investment in Westinghouse, the significant disputes it had with U.S.-based auditors about the need to take a goodwill impairment charge, and the negotiations leading to Toshiba's acquisition of the Louisiana-based Shaw Group's interest in Westinghouse.     *E.g.*,¶¶8-10,135-136,142-143,157(b).   Indeed, the fraudulent scheme described in the complaint resulted directly from the business pressures caused by the Westinghouse acquisition, and the tough questions the Company faced from U.S. shareholders as a result.  ¶8.  Even if *some* foreign witness testimony is needed, there are long-standing procedures in Japan available to the litigants in this case to efficiently and effectively preserve it.  U.S. Embassy & Consulates in Japan, *Depositions in Japan*, https://tinyurl.com/USEmbassyDepos (last visited Oct. 30, 2019) (detailing procedures and disclosing that current wait time for scheduling depositions in Japan is less than three months).

**B.    Comity Does Not Support Dismissal of the U.S. Law Claims**

Toshiba's contention that the claims under the ***U.S.*** Exchange Act are barred by comity is absurd.  In *Morrison*, the Supreme Court directly confronted and rejected the kind of analysis that Toshiba presents here, holding that the geographic location of the transaction – and ***not*** the location of the fraudulent conduct or its effect – determines where the Act can be applied ***without*** interfering with the interests of a foreign nation. *Morrison*, 561 U.S. at 257-59, 269-70; *Stoyas*, 896 F.3d at 950.  Toshiba's argument flies in the face of *Morrison*, and must be rejected.

As a threshold matter, by failing to previously seek dismissal of the Exchange Act claims on comity grounds Toshiba has waived the argument.  Fed. R. Civ. P.

- 6 -

1   12(g).  Toshiba offers no explanation for its failure to raise this issue earlier, nor

2   have any factual circumstances changed so as to justify its attempt to do so now.  Its

3   motion can be rejected on this ground alone.  *In re Packaged Seafood Prods.*

4   *Antitrust Litig.*, 277 F. Supp. 3d 1167, 1174 (S.D. Cal. 2017).

5        Regardless, the grounds Toshiba presents for comity dismissal of the

6   Exchange Act claims are insufficient.  Toshiba's contentions that the Exchange Act

7   claims can be denied based on "'where the conduct in question took place'" (Mot.

8   at 21) or the "'character' of this action" (*id.* at 22) are contrary to *Morrison*, which

9   forcefully rejected such attempts to decide whether to apply the Exchange Act based

10  on the conduct or effects of the fraud in question. *Morrison*, 561 U.S. at 255-61,

11  266-67.  The "clear . . . transactional test" adopted by the Supreme Court ***assures***

12  that regulatory prerogatives of foreign governments will ***not*** be undermined by

13  applying the Exchange Act.  *Id.* at 269.  In so concluding, the Supreme Court again

14  recognized the strong national public interest the United States has in regulating

15  transactions within its borders, including transactions that take place on over-the-

16  counter markets.  *Morrison*, 561 U.S. at 263, 266; *see also Ernst & Ernst v.*

17  *Hochfelder*, 425 U.S. 185, 194-95 (1976).  Toshiba's contention that Japan's interest

18  in domestic transactions outweighs the interests of the United States cannot be

19  reconciled with *Morrison*.  *See* 561 U.S. at 266.

20       Toshiba's assertion (Mot. at 21) that it is undisputed that Japan provides an

21  adequate forum for litigation of the Exchange Act claims is also incorrect.  This

22  Court's earlier opinion only addressed the adequacy of the Japanese forum for

23  litigation of the JFIEA claims; it says absolutely nothing about litigating Exchange

24  Act claims overseas.  *See Stoyas v. Toshiba Corp.*, 191 F. Supp. 3d 1080, 1097 (C.D.

25  Cal. 2016) (hereinafter "*Prior MTD Order*").  Toshiba makes no attempt to show

26  that a Japanese court would even entertain claims under the Exchange Act, much

27  less that it would provide an adequate forum in which to resolve such claims.

28

- 7 -

1    That the Trade Ministry of Japan filed a three-paragraph brief supporting

2    Toshiba's petition for *certiorari* is of no moment.  Toshiba offers no reason why this

3    Court should accord Japan's objections more weight than the Supreme Court (which

4    rejected the petition, despite the Trade Ministry's concerns), nor any explanation as

5    to why the Japanese government has ***never*** asked ***this*** Court to refuse to consider

6    ***any*** aspect of this case.  If Japan does not consider its interests of sufficient weight

7    to directly petition this Court, there is no reason for this Court to indulge Toshiba's

8    self-serving speculation that those interests are so great as to justify overriding or

9    carving out an unprecedented exception to the judgment of the Supreme Court.

10   Indeed, Toshiba does not cite a single case where application of the Exchange Act

11   was proper under *Morrison* but where the claim was nevertheless dismissed out of

12   comity deference to foreign interests.

13   So, too, no arm of the U.S. government has asserted that considering the

14   Exchange Act claims here "'would be harmful to U.S. foreign policy,'" nor does the

15   SEC's brief to the Supreme Court "favor[] dismissal."  *See* Mot. at 23.  The SEC

16   ***rejected*** arguments for dismissal based on comity, noting that other procedural

17   safeguards – including plaintiffs' requirement to establish personal jurisdiction and

18   meet the elements of the claim – "ensure that the [application of the Exchange Act]

19   ***will not disrupt foreign securities regulation in any meaningful way***."[12]  Brief for

20   the United States as Amicus Curiae, *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund*,

21   No. 18-486, 2019 WL 2185128, at 8-9 (U.S. May 20, 2019) ("SEC Amicus Br.").

22   By the same token, that this case might be certified as a class action "would not be

23   a factor that this Court would consider in evaluating whether it should refuse to

24

25

---

26   [12]  Neither does the SEC brief support a finding that comity prevents the "in
     connection with" requirement from being met.  The SEC "[took] no position" on the

27   issue, and only allowed that such considerations "may be relevant" and could make
     it "more difficult for respondents to prove" (not "plead") the elements of their

28   claims.  *See id.* at 16-18; *see also infra* §II.D.

1    exercise jurisdiction because of comity concerns."  *E.g.*, *Volodarskiy v. Delta Air*
2    *Lines, Inc.*, 987 F. Supp. 2d 784, 795 (N.D. Ill. 2013).[13]

3          Toshiba's assertion (Mot. at 24) that the dismissal of the Exchange Act claims
4    would be consistent with the Ninth Circuit's acknowledgment of the "forceful[]"
5    arguments it had made about "*Morrison's* animating comity concerns" is also
6    incorrect, because it disregards the next sentence of the opinion: "Nevertheless, ***that***
7    ***is not a basis for declining to follow*** the Court's clear instructions in *Morrison*."
8    *Stoyas*, 896 F.3d at 950.  Toshiba's comity arguments provide no reason to dismiss
9    the Exchange Act claims.

10   **C.    The Complaint Correctly Alleges – and Toshiba Has**
           **Previously Conceded – that AIPTF Purchased Its ADRs in**
11         **the United States**

12         There is, as Toshiba itself has previously admitted, no question that the ADR
13   transactions took place in the United States.  Toshiba advances no credible factual
14   basis nor any relevant legal authorities in support of their newfound assertion that
15   the ADR transactions were not domestic.

16         This Court previously found that plaintiffs had adequately alleged that the
17   transactions took place in the United States.  *Prior MTD Order*, 191 F. Supp. 3d at

18

19

---

20   [13]  Toshiba's class certification arguments are also premature and cannot be
21   considered at this stage.  *E.g.*, *Santiago v. Amdocs, Inc.*, 2011 U.S. Dist. LEXIS
     36111, at *5-*6 (N.D. Cal. Apr. 2, 2011).  Toshiba's potential liability is not
22   expanded under Rule 23, because only investors who submit proof that they were
     damaged by Toshiba's fraud will be permitted to recover.  Relatedly, Toshiba does
23   not dispute that the SAC adequately addresses the Ninth Circuit's questions over the
     prior Class definition.  *See Stoyas*, 896 F.3d at 949 & n.20; *cf.* ¶334 (limiting
24   American Securities Purchasers class to persons who "purchased" securities "on the
     OTC Market") & ¶339 (explaining how this assures that only transactions where
25   irrevocable liability was incurred in the United States will be covered); *see also infra*
     §II.D.  While Toshiba complains that neither of the named plaintiffs purchased
26   TOSBF, it ignores that the claims of purchasers of TOSYY or Toshiba 6502
     common stock are representative of the claims of TOSBF purchasers, such that they
27   can properly be included in this case.  *Melendres v. Arpaio*, 784 F.3d 1254, 1262
     (9th Cir. 2015).  Again, this is an issue that can be addressed at the class certification
28   stage, but is not appropriate to resolve now.

1094.   Toshiba's oral argument to the Ninth Circuit expressly acknowledged that

this finding was correct:

> [Plaintiffs] focus[] on the fact that the ADRs that certain of the plaintiffs purchased were purchased in the United States, and ***District Judge Pregerson acknowledged that correctly – and we acknowledge that. There's no question that those transactions took place in the United States.***  But that's not enough under *Morrison*.

https://tinyurl.com/NinthCircuitArgument at 13:41-14:05 (Nov. 9, 2017).  The SEC

agrees that the transactions were "undisputedly domestic."  SEC Amicus Br. at 8.

Having seen its "domestic transaction is not enough" argument rejected at

both the Ninth Circuit and the Supreme Court, Toshiba now reverses course and

seeks dismissal on the purported ground that the transactions were not "domestic"

after all.[14]  This argument too has been waived. Fed. R. Civ. P. 12(g)(2); *Packaged*

*Seafood*, 277 F. Supp. 3d at 1174.  But even if it hadn't been, the argument would

still fail because Toshiba identifies no alleged (or even unalleged) fact that would

support a finding that "irrevocable liability" was not incurred in this country.

That title to the ADRs was transferred in the United States (¶22(g)) is alone

sufficient to establish that AIPTF's transaction was domestic.  *Stoyas,* 896 F.3d at

948; *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir.

2012).  Toshiba's objection that the transfer of title came later is irrelevant, as it is

the place of transfer that subjects the transaction to the Exchange Act, not the date

on which the act occurred.[15]  *Morrison*, 561 U.S. at 269-70.  The other facts alleged

in the complaint also support the allegation that AIPTF became bound to complete

the purchase in the United States.   ¶¶20-22,39-41,56-65,75-90,339.   AIPTF, its

investment manager, its broker who placed the order, its custodial bank who

---

[14]   We need not respond to Toshiba's attempt (Mot. at 8) to preserve its arguments under a Second Circuit decision that the Ninth Circuit expressly rejected.

[15]   Toshiba's quibble that the transaction settled three days after AIPTF placed its buy order is inane.   As virtually every market participant knows, all securities transactions typically settle two or three days after the order is placed.

- 10 -

disbursed the funds for the purchase, and the depositary bank that issued the ADR were all located in the United States when they participated in the transaction. ¶¶22,58. The transactions took place using the facilities of the OTC Market, all of which were located in, and designed to serve clients in, the United States. ¶¶39-41,75-90. TOSYY was traded and the ADRs were issued in the United States, which was also where purchasers had the right to forfeit the ADR in exchange for the underlying shares of Toshiba common stock. ¶¶48-52,57-64. The complaint also specifically identifies (and Toshiba ignores) the OTC Market rules that: (a) bind purchasers and sellers to complete transactions when offers to purchase or sell are posted on the market, and (b) deem sales complete upon delivery of funds by the buyer and delivery of securities by the sellers – both of which occurred in the United States. FINRA, Rule 5220 (2012); ¶¶22(f,g),41,85-86.

The foregoing facts support the allegations (¶¶22,90,339) that AIPTF incurred irrevocable liability to complete the transaction in the United States.[16] "[I]t is sufficient for a plaintiff to allege facts leading to the plausible inference that the parties incurred irrevocable liability within the United States." *Absolute Activist*, 677 F.3d at 68; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). Toshiba's contention that the domestic transaction allegations are implausible mischaracterizes both the Ninth Circuit's opinion and the requirements of the irrevocable liability test. While the Ninth Circuit adopted the irrevocable liability test, it did not decide what was required to meet the test. The Ninth Circuit did ***not***, as Toshiba asserts, hold

---

[16] *See, e.g., In re Tezos Sec. Litig.*, 2018 WL 4293341, at *8 (N.D. Cal. Aug. 7, 2018) (Exchange Act applies where plaintiff participated in the transaction from the U.S. using an interactive website that was hosted on a server in Arizona and run by an individual in California); *Giunta v. Dingman*, 893 F.3d 73, 80-81 (2d Cir. 2018) (Exchange Act applied where trading rules bound parties to complete transaction, regardless of whether the exchange could cancel or modify transaction to rectify errors); *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2 F. Supp. 3d 550, 560 (S.D.N.Y. 2014) (domestic transaction occurred where order was placed with broker in Miami who transmitted the order to a broker-dealer in New York, where funds from plaintiff's account were transferred);

- 11 -

that allegations about the location of the parties or the market where the transactions took place were incompetent to support an allegation that irrevocable liability was incurred here.[17]   The panel simply noted that the prior complaint lacked sufficient details about the specific transactions by which AIPTF "acquired" its ADRs, such that it could not conclude, on that pleading, that the securities had been purchased in the United States.[18]   *Stoyas*, 896 F.3d at 938, 949 n.20, 951.  But the Ninth Circuit expressly recognized that, given the location of the parties and the OTC Market, "an amended complaint could almost certainly allege sufficient facts to establish that AIPTF purchased its Toshiba ADRs in a domestic transaction." *Stoyas*, 896 F.3d at 949.  The SAC plainly does so.

At bottom, Toshiba's argument elevates form over substance, and ignores that the transactions at issue irrefutably took place in the United States.[19]  As the cases Toshiba relies upon illustrate, the "irrevocable liability" test bars application of the Exchange Act only where some significant aspect of a transaction was foreign, rendering it implausible that either party became bound in the United States.[20]  No remotely similar facts are present here, where ***all*** relevant aspects of the transactions

---

[17]  Nor does *Absolute Activist* find those allegations irrelevant, as the out of context quotations in Toshiba's brief misleadingly suggest.  *See* 677 F.3d at 68-70; *cf.* Mot. at 10.

[18]  It should be noted that express allegations of "irrevocable liability" were ***not*** included in the prior complaint because such allegations were not required in this Circuit at the time that complaint was filed.

[19]  *See*, *e.g.*, *United States v. Vilar*, 729 F.3d 62, 77 & n.11 (2d Cir. 2013) ("territoriality under *Morrison* concerns where, physically, the purchaser or seller committed him or herself, not where, as a matter of law, a contract is said to have been executed"); *accord SEC v. Scoville*, 913 F.3d 1204, 1226 (10th Cir. 2019).

[20]  *Loginovskaya v. Batratchenko*, 764 F.3d 266 (2d Cir. 2014) (Commodities Futures Act doesn't apply where plaintiff's investment was solicited and contracts were negotiated and signed in Russian by parties living in Russia); *Banco Safra, S.A. – Cayman Is. Branch v. Samarco Mineracano S.A.*, 2019 U.S. Dist. LEXIS 101561, at *4 (S.D.N.Y. June 18, 2019) ("This is a case by a Brazilian/Cayman Island plaintiff against Brazilian defendants regarding Brazilian bonds and claims which relate to a Brazilian catastrophe.  The bonds were never listed on a U.S. exchange and were principally offered and sold outside the United States.").

- 12 -

were domestic.[21]   *E.g.*,¶¶22,39-41,58-64,83-90,339.   Moreover, the details that Toshiba complains are missing are irrelevant.   The irrevocable liability test is satisfied where *either* the buyer *or* the seller became bound in the United States. *Absolute Activist*, 677 F.3d at 68.   Therefore, the identity of the seller of the common stock that underlies the ADRs has no bearing on where AIPTF incurred irrevocable liability to purchase the ADRs.

Moreover, that it is necessary to acquire common stock in order to support the sale of an ADR does not support Toshiba's newfound argument that the transaction was foreign.[22] If accepted, Toshiba's argument would find that *all* ADR transactions are "foreign" and therefore not subject to the Exchange Act. *Every* ADR transaction – whether sponsored or not – requires a corresponding acquisition of foreign stock, and courts have rejected the argument that this transforms it into a foreign transaction to which the Exchange Act cannot apply. *E.g.*, *Wu v. Stomber*, 883 F. Supp. 2d 233, 253 (D.D.C. 2012); *United States v. Martoma*, 2013 U.S. Dist. LEXIS 176998, at *16-*17 n.4 (S.D.N.Y. Dec. 17, 2013).   Like the wiring of funds to a bank in New York in *Loginovskaya*, the acquisition of common stock was simply an "action[] needed to carry out the transaction[]."[23]   Nothing about that transaction can

---

[21]   Nor are the detailed facts pled here similar to those in *Daniel v Nat'l Park Serv.*, where the complaint contained "only two generic statements" that the identity theft suffered by the plaintiff had resulted from the defendant's actions.  891 F.3d 762, 767 (9th Cir. 2018).

[22]   Toshiba raises this contention throughout its brief, variously contending that dismissal is required because the "economic reality" of an ADR transaction is the purchase of foreign stock (Mot. at 16) or that plaintiffs are basing their ADR claims on the "purchase [of] Toshiba common stock in a foreign transaction" (Mot at 18). Arguments like these simply reflect a deliberate disregard of the Ninth Circuit's opinion, and a refusal to accept the Court's judgment that the Exchange Act applies to unsponsored ADRs, irrespective of the fact that those transactions were affected by foreign fraud or designed to convey interests in foreign stock. *See, e.g.*, *Stoyas*, 896 F.3d at 942, 950.

[23]   764 F.3d at 274-75; *see also Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1109-10 (D. Nev. 2014) (where wiring of funds and issuing of Certificates of Investment reflecting plaintiffs' investments were completed in the United States

4830-8876-6379.v1

1   overcome the fact that AIPTF purchased the ADRs and became bound to complete

2   the transaction in New York.  Thus, Toshiba's belated acknowledgment of the

3   connection between the common stock it sold in Japan and the injuries suffered by

4   purchasers of ADRs in the United States does not save it from liability.

5   **D.   Toshiba's Fraud Was Committed In Connection With
        Transactions in TOSYY and TOSBF**

6       As the Ninth Circuit has repeatedly emphasized, the in connection with

7   requirement provides only a "slim hurdle" for plaintiffs to overcome, and is satisfied

8   by any showing that the fraud "'ha[d] more than some tangential relation to the

9   securities transaction.'"  *E.g.*, *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146,

10  1155 (9th Cir. 2017).  While Toshiba urges that comity requires the in connection

11  with requirement to be "construed narrowly" in this case (Mot. at 19-21), the

12  Supreme Court has "rejected that view."[24]  *Merrill Lynch, Pierce, Fenner & Smith*

13  *Inc. v. Dabit*, 547 U.S. 71, 85 (2006).  "Under our precedents, it is enough that the

14  fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by

15  someone else."  *Id.*

16      In line with this principle, the in connection with requirement is met where,

17  *inter alia*, the alleged misrepresentations influence an investment decision or affect

18  the value or merit of the securities in question or the risks involved in purchasing

19  them.[25]  The in connection with requirement has similarly been construed to only

20  "require[] a causal relationship between the fraud and the resulting injury."[26]

21

22  _____

23  irrevocable liability attached, even if executed contracts had been sent to the Japan
    branch as part of the transaction).

24  [24]  Nor are any legitimate comity arguments for dismissal of the Exchange Act
    claims presented in this case.  *Infra* §II.B.

25  [25]  *Id.* at 1154-55; *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026
26  (9th Cir. 1999); *accord SEC v. Jakubowski*, 150 F.3d 675 (7th Cir. 1998)
    (Easterbrook, J.); *City Nat'l Bank of Fort Smith, Ark. v. Vanderboom*, 422 F.2d 221,
27  229-32 (8th Cir. 1970).

28  [26]  *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 650 (9th Cir. 1988);
    *accord Arst v. Stifel, Nicolaus & Co.*, 86 F.3d 973, 977 (10th Cir. 1996); *see also*

- 14 -

### 1.   The Facts Alleged Meet the In Connection With Requirement

The alleged fraud involved a scheme perpetrated at the highest levels of Toshiba that was specifically designed to overstate earnings in quarterly financial reports in order to meet forecast results and prevent stock price declines that would reduce Toshiba's value and jeopardize its executives' bonuses and other compensation.  *See* Ex. 1.  The false and misleading quarterly reports that Toshiba issued clearly concealed the risks of purchasing TOSYY and TOSBF and influenced decisions by AIPTF and other investors on the OTC Market to purchase those securities. ¶¶154-299.  Toshiba's overstatement of its financial results also directly affected the value of TOSBF and TOSYY, as demonstrated by the substantial stock price declines that occurred when Toshiba's fraud was revealed, injuring investors who purchased those securities in the U.S.   ¶¶155,300-333.   Under these circumstances, binding Ninth Circuit precedent demands the conclusion that the fraud was carried out "in connection with" the Class Period transactions in TOSYY and TOSBF that are at issue in this case.[27]

Indeed, the Ninth Circuit has found the requirement met under circumstances that are far more remote from securities transactions than the misrepresentations at

---

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1116-17 (9th Cir. 2013) (requirement met where fraud "'coincides'" with a securities transaction).

[27] *E.g.*, *U.S. Mortg., Inc. v. Saxton*, 494 F.3d 833, 844-45 (9th Cir. 2007) *abrogated on other grounds by Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208 (9th Cir. 2009) (scheme to fraudulently hide defendant's financial condition by overstating its quarterly results in a manner that inflated its stock price); *SEC v. Rana Research*, 8 F.3d 1358, 1362 (9th Cir. 1993) ("Where the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission."); *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1486 (9th Cir. 1991) (in connection with requirement satisfied where both transaction causation and loss causation are present).

- 15 -

4830-8876-6379.v1

issue here,[28] including in cases where the parties themselves did not transact in the securities.[29]  Cases in which courts have found the in connection with requirement **not** met similarly arise from circumstances that bear no similarity to this suit.  Rather, courts have found the requirement missing where there was **no** underlying securities transaction,[30] where the fraud occurred **after** the transaction in question,[31] or where the fraud could not have otherwise caused the investor's loss[32] or influenced their decision to purchase or sell securities.[33]  No court has **ever** held the requirement not

---

[28] *See, e.g., Jett v. Sunderman*, 840 F.2d 1487, 1494-95 (9th Cir. 1988) *abrogated on other grounds by Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) (reversing summary judgment on grounds that concealment of certain terms of underlying financing could have increased the risks of the securities or induced investors to purchase them); *Ambassador*, 189 F.3d at 1025-27 (misrepresentations that induced plaintiff to sign a joint venture agreement were in connection with later transfers of stock by corporation later formed to carry out the joint venture); *Fleming*, 878 F.3d at 1155 (false promises of "best execution" that induced investor to trade with brokerage and caused alleged losses were in connection with the purchase or sale of securities); *Ohashi v. Verit Indus.*, 536 F.2d 849, 853 (9th Cir. 1976) (long-running fraudulent scheme to maintain restrictions on stock received in connection with acquisition was in connection with the transaction because defendant was under a continuing duty of good faith and fair dealing until the restrictions were lifted); *Freeman*, 704 F.3d at 1117-18 (fraudulent deductions of fees that reduced the funds available for investment under variable life insurance contracts were in connection with securities transactions).

[29] *Saxton*, 494 F.3d at 844-45; *Rana Research*, 8 F.3d at 1361-62; *Freeman*, 704 F.3d at 1118.

[30] *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) (fraud that induces plaintiff **not** to sell securities); *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977) (misrepresentations as to general investment strategy, not a specific purchase or sale).

[31] *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999) (deception on November 6 could not have influenced purchase on October 31); *Arst*, 86 F.3d at 977 (failure to disclose self-dealing in response to **post-sale** request for names of purchasers); *Roberts*, 857 F.2d at 652 (fraud "occurred after the investors made their subscription agreements").

[32] *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 872 (9th Cir. 2010) (losses did not result from pledge of securities as collateral).

[33] *E.g., Shivers v. AMERCO*, 670 F.2d 826, 830 (9th Cir. 1982) (plaintiffs were aware of facts before they sold shares); *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1051-52 (9th Cir. 2019) (requirement met only if plaintiff had power to control investment decision); *accord O'Brien v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 593 F.2d 54 (7th Cir.

- 16 -

1    met under circumstances similar to those at bar, where the fraud was indisputably

2    material to investors and undeniably caused share price declines that injured its

3    victims.

4         The Ninth Circuit did ***not*** – as Toshiba appears to misapprehend – find any of

5    the allegations of the prior complaint irrelevant to the in connection with inquiry.  It

6    held that the issue could not be decided without amendment, because the prior

7    complaint had "erroneously ignore[d] the distinction between ADRs and common

8    stock" and omitted "basic details" about the transactions, and because other facts

9    bearing on the inquiry had not been pled in the complaint.  *Stoyas*, 896 F.3d at 951-

10   52.  To the extent Toshiba asks this Court to infer what the panel thought about the

11   merits of the in connection with issue – an issue, we need mention, that was never

12   even briefed to that court – it should decline to do so.  *See Sakamoto v. Duty Free*

13   *Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("unstated assumptions on non-

14   litigated issues are not precedential holdings binding future decisions").

15        As the Ninth Circuit noted at the outset of its opinion in this case, "at the heart

16   of this appeal is the question of the nature of ADRs and their transactions."  *Stoyas*,

17   896 F.3d at 937.  The court reiterated that point when it turned to the in connection

18   with requirement: "First and foremost," it said, "sufficiently pleading Toshiba's

19   connection to the ADR transactions requires clearly setting forth the transactions."

20   *Id.* at 951.  The SAC does so.  Unlike the prior pleading, the SAC describes the

21   nature of the TOSYY ADRs and TOSBF common shares purchased by Class

22   members (SAC,§IV) and provides detailed factual allegations regarding the OTC

23   market (*Id.*,§IV.C) and the establishment of the Toshiba ADR program

24   (*id.*,§IV.B.2), including the depositary institutions that offer Toshiba ADRs (¶58),

25   the Form F-6s they used to register the securities (¶¶60-61,Exs.10-13), the securities'

26

27   1979) (not met where beneficiary lacked veto power); *Norris v. Wirtz*, 719 F.2d 256

28   (7th Cir. 1983) (met where beneficiary's consent to transaction was required).

- 17 -

trading volume (¶47), and their contractual terms and relevant variants (¶¶61-64,Exs.10-13).   The SAC also provides the requisite detail regarding AIPTF's purchase of TOSYY, including how the purchase was made and which particular depositary institution holds the corresponding Toshiba common stock (¶22).   And the SAC includes additional allegations regarding Toshiba's consent to the sale of its stock as ADRs in the United States (SAC,§IV.B.3), the relationship between the price of TOSYY and TOSBF and the price of common stock sold in Japan (*id.*,§IX.A), and the acquisition of common shares by the depositaries (¶¶48-53,59). These allegations correct the deficiencies that the Ninth Circuit identified in the prior pleading.  *See Stoyas*, 896 F.3d at 941 n.10, 951-52.

Toshiba's acknowledgment that the fraud impacted the price of TOSYY and TOSBF shares (Mot. at 18) concedes, under the binding case law described above, that the alleged fraud was in connection with the alleged domestic transactions.  *E.g.*, *Roberts*, 857 F.2d at 650.  The impact the fraud had on the price of TOSYY and TOSBF suffices to plead that the fraud induced investors to purchase those securities, further demonstrating that the in connection with requirement is met.[34] *See*, *e.g.*, *Basic v. Levinson*, 485 U.S. 224, 241-45 (1988) (investors are presumed to have relied upon misrepresentations that affect the price of securities traded in efficient markets); *In re Ames Dep't. Stores Inc. Stock Litig.*, 991 F.2d 953, 967-68 (2d Cir. 1993) (recognizing overlap between reliance, materiality and in connection with requirements).  As the complaint explains and Toshiba concedes, prices of both TOSYY and TOSBF track and move in tandem with the price of Toshiba's common stock sold in Tokyo, such that Toshiba's fraud impacted the price of the securities

---

[34]  Toshiba's apparent suggestion that *it* must have actively participated in the transactions in order to "induce" an investment is incorrect.  Indeed, most securities fraud claims arise from transactions on the secondary market which take place without any active involvement by the issuer, but for which courts regularly find that the misrepresentations induced the purchase.

sold in America in the same manner and to the same extent as it impacted the share price in Tokyo.  ¶¶46,309-312; *see also* ¶¶313-133.

That the Ninth Circuit previously acknowledged this price relationship does not equate to a rejection of it.[35]  In so contending, Toshiba ignores a long history of precedent in this Circuit finding the in connection with requirement met where loss causation is present.  *E.g.*, *Ambassador*, 189 F.3d at 1026; *Levine*, 950 F.2d at 1486.  The *Stoyas* panel lacked the power to reject this precedent; only an *en banc* review can do that.  *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478 (9th Cir. 1987) (*en banc*).  Additionally, Toshiba ignores that the panel raised questions about the price relationship (*Stoyas*, 896 F.3d at 941 n.10) which have been answered by the amended complaint (¶¶310-312 & n.24), further negating the contention that the Ninth Circuit deemed those allegations incompetent.

The authorities that Toshiba relies upon are inapposite.  In *Rezner*, the fraud related to the legality of a tax shelter.  630 F.3d at 869.  Although the plaintiff had pledged municipal bonds as collateral in order to participate in the shelter, none of the misrepresentations related to or affected the value of those securities, nor did plaintiff's loss result from the pledge.  *Id.* at 872.  Here, by contrast, plaintiffs' losses resulted directly from their purchases of TOSYY and TOSBF at prices that were inflated by Toshiba's fraud.[36]  SAC,§IX.  That the fraud impacted the price of TOSYY and TOSBF and caused damages to those who purchased those securities also illustrates why *Ambassador* does not bar the claims asserted here.   In *Ambassador*, the misrepresentations concerned the costs of construction that

---

[35]  Nor did it.  Toshiba's suggestion that the Ninth Circuit would have upheld the FAC if it found the price relationship sufficient (Mot. at 18) is a red herring.  By the same token, the Ninth Circuit would have found amendment futile and upheld this Court's prior dismissal order if, as Toshiba argues, the in connection with requirement could never be met in a case involving unsponsored ADRs.

[36]  Notably, Toshiba's motion does not challenge loss causation, materiality, reliance or any other element of an Exchange Act claim.

- 19 -

induced plaintiff to enter into a joint venture agreement and advance funds in exchange for over-valued securities in a corporation that was later formed to carry out the project.  189 F.3d at 1025-27.  Here, Toshiba's false financial reports and other misrepresentations similarly concealed the risks of investing in TOSYY and TOSBF, inducing investors to purchase them at the inflated prices prevailing in the market.  SAC, §§VI, IX.  Neither case supports dismissal.

Toshiba similarly ignores the facts in contending that its fraud only concerned the value of Toshiba common stock sold in Japan, and had no cognizable relationship to the ADRs.  Toshiba bases this incorrect argument on *Stoyas*, where the Ninth Circuit observed, quoting *Ambassador*, that "'[d]eception related to the value or merit *of the securities in question*'" suffices to meet the in connection with requirement.  Mot. at 18 (emphasis in original).  But in contending that this requires the misrepresentations to be direct statements ***about*** the ADRs or their value, Toshiba ignores that *Ambassador* itself rejects that notion.  189 F.3d at 1026 ("the fraud in question need not relate to the investment value of the securities themselves").  Toshiba also ignores that the misrepresentations about the construction costs in *Ambassador* only indirectly "implied" something about the value of the securities in question – which did not even ***exist*** at the time the misstatements were made.[37]  *Id.* at 1025-27.  Further, the portion of *Ambassador* cited by *Stoyas* in turn cited the Ninth Circuit's earlier opinion in *Rana Research*, where the Court recognized that misinformation communicated in press releases, earnings reports and the like suffices to meet the in connection with requirement, because such materials contain information that affects investors' view of the

---

[37]  The securities were issued by a corporation that was formed after the plaintiff was fraudulently induced to sign a joint venture agreement.  Because the misrepresentations "implied" that the later-formed corporation would have a certain value, the Ninth Circuit found they were "misstatements about the value of the proposed investment as well as the risks involved" which "go to the nature of the securities at issue" and met the in connection with requirement.  *Id.*

- 20 -

1   intrinsic value of securities and the risks involved in purchasing them.  8 F.3d at

2   1362.

3        Neither does *SEC v. Tourre*, 2012 U.S. Dist. LEXIS 165214 (S.D.N.Y. Nov.

4   19, 2012) support Toshiba's arguments for dismissal.  That case involved two

5   separate transactions – a domestic one, in which no fraud occurred, and a foreign

6   one, which was induced by fraud.[38]  The Court found the Exchange Act did not apply

7   under those circumstances, because the fraud was not "in connection with" the

8   domestic transaction, which was the only transaction to which the Exchange Act

9   *could* apply under *Morrison*.  *Id.* at *13-*17.  Here, the fraud infected both the

10   foreign and domestic transactions in Toshiba securities.  *Tourre* lends no support for

11   dismissal.

12        **2.**    **The In Connection With Requirement Does Not
13            Require Toshiba's Involvement, But Even if It Did the
         Facts Alleged Would Suffice**

14        Neither the Exchange Act nor case law interpreting it supports Toshiba's

15   contention that the in connection with requirement can only be met where Toshiba

16   had some active involvement in the issuance or sale of the securities whose price

17   was affected by its fraud.[39]  The Act has been regularly applied against issuers based

18   on transactions in options and other derivative securities that they were not involved

19   in creating.[40]  If misrepresentations that affect the value or cause losses to the

___

[38]   Toshiba's attempt to shoehorn the facts of this case into *Tourre* by treating the purchase of ADRs as two separate transactions – a purportedly foreign purchase of common stock, followed by a later tender of the stock in exchange for the ADR – is incorrect.  The deposit of common stock was simply an aspect of that transaction – not a separate transaction involving different parties as in *Tourre*.  *Supra* at 13.

[39]   *See also SEC v. Compania Internacional Financiera S.A.*, 2011 U.S. Dist. LEXIS 83424, at *19-*20 (S.D.N.Y. July 29, 2011) ("*Morrison* . . . never states that a defendant must itself trade in securities listed on domestic exchanges or engage in other domestic transactions.").

[40]   *See*, *e.g.*, *Fry v. UAL Corp.*, 84 F.3d 936, 939 (7th Cir. 1996) (options traders have standing to sue the issuers of the referenced securities despite issuers lack of involvement in options contracts); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 965 (N.D. Cal. 2005) (fraud was in connection with equity-linked debt securities sold by UBS without involvement from the defendant corporation because

1    purchasers of those securities meet the in connection with requirement, so too must

2    the misrepresentations at issue in this case.

3           But even if some level of participation or consent were required (it isn't), the

4    complaint pleads sufficient facts to meet that requirement by plausibly alleging,

5    based on long-standing industry customs and practices, that Toshiba **did** approve the

6    sale of its shares as ADRs in the U.S.  SAC,§IV.B.3.  Under these well-established

7    practices and formal internal procedures, each of the depositaries involved in the

8    sale of Toshiba ADRs contact foreign issuers **before** unsponsored ADR programs

9    are established to obtain their express or implied consent to do so, and will abstain

10   from establishing – and have even cancelled existing – unsponsored programs if the

11   issuer objects or refuses to provide its consent.   ¶¶66-69.  These practices were

12   described to the SEC by market participants asserting that a regulatory consent

13   requirement was unnecessary (¶67), have been described in regulatory bulletins

14   issued by law firms who assist in the formation of both sponsored and unsponsored

15   ADR programs (¶68), and have been confirmed by senior executives at several of

16   the depositaries who established Toshiba ADR programs (¶69).  Those allegations

17   "sound in common sense and state a plausible claim" that, like the many other

18   foreign issuers whose shares are sold as unsponsored ADRs, Toshiba **was** contacted

19   before the unsponsored ADR programs at issue in this case were established, and

20   _____

21   the redemption value of the debt securities was based on the value of the defendant's
     shares); *Liebhard v. Square D Co.*, 1992 U.S. Dist. LEXIS 15582, at *8-*9 (N.D.

22   Ill. Oct. 14, 1992) ("if, as is alleged in this case, a corporation issues a misleading
     statement and, in reasonable reliance thereon, option traders purchase or sell options

23   on that corporation's stock, they have traded in 'securities' within the meaning of
     the 1934 Act and have satisfied the 'in connection with' element"); *Tolan v.*

24   *Computervision Corp.*, 696 F. Supp. 771, 775 (D. Mass. 1988) ("Upon making the
     alleged fraudulent misrepresentations and material omissions, Computervision and

25   the Individual Defendants incurred potential liability to persons who might suffer
     pecuniary loss as a result of relying on a market influenced by false and misleading

26   statements."); *SEC v. Sabrdaran*, 2015 U.S. Dist. LEXIS 25051, at *31-*38 (N.D.
     Cal. Mar. 2, 2015) (insider trading was "in connection with" the company's

27   securities where defendant-trader placed "spread bets" with a UK broker on the
     company's stock price that were hedged by the UK broker by buying call options on

28   the company's shares).

- 22 -

4830-8876-6379.v1

that its consent to those programs was obtained or reasonably implied under the circumstances.[41]   Those allegations must be credited.   *Iqbal*, 556 U.S. at 668; *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

Toshiba's suggestion that these practices did not exist or might have varied contradicts the complaint and at best raise issues for discovery.  *See*, *e.g.*, *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059, 1077 (N.D. Cal. 2015). The practices described in the complaint were widespread and ingrained in the industry.   There is no reason to believe – particularly at this stage – that the depositaries disregarded their formal internal procedures (¶69) and decided ***not*** to contact Toshiba when the ADRs at issue here were created.  Even Toshiba stops well short of saying that in fact it ***wasn't*** contacted; it just suggests – without foundation – that perhaps it wasn't.

Toshiba's suggestion that the depositaries all stopped following these practices as soon as the SEC rule allowing the sale of unsponsored ADRs was adopted (Mot. at 14) just contradicts the sources pled in the complaint, which describe practices that continued ***after*** the rule was adopted, and continue to this day. ¶¶66,69.  Nor would it be reasonable to infer that the market participants were not being truthful when they told the SEC that a consent requirement was not necessary because, as a practical matter, consent was already being – and would continue to be – obtained.  ¶67.  And while it is true that some law firms have sought to drum up business by warning issuers that it is technically possible for unsponsored programs to be established over their objections (and explaining to them how easy it was to prevent that), nothing in the complaint, the Congressional record or anywhere else

---

[41]   *JDC, Inc. v. Interstate Hotels & Resorts*, 2010 WL 11596123, at *4 (C.D. Cal. Oct. 25, 2010) ("Plaintiff's allegations of prevailing industry practice sound in common sense and state a plausible claim that Defendants' alleged misrepresentations were false when made."); *see also HECNY Transp. v. H. Cotler Co.*, 1994 U.S. Dist. LEXIS 6201, at *4 (S.D.N.Y. May 12, 1994) (crediting allegations based on industry customs at pleading stage).

1    supports Toshiba's wild speculation that depositaries intended to, or did, begin doing

2    so *en masse* as soon as the SEC adopted the new regulation.

3           Toshiba's arguments directed at other allegations relating to Toshiba's

4    acquiescence or support of the sale of its shares as ADRs in the U.S. fare no better.[42]

5    The Ninth Circuit did not "reject" the English language allegations; it said only that

6    those allegations "without more" were insufficient, and did so in a portion of the

7    opinion noting that other information bearing on the inquiry – including the industry

8    customs and practices described above – could not be considered because it was not

9    alleged in the prior complaint. *Stoyas*, 896 F.3d at 951-52 & n.24.  Moreover, that

10   the ADRs could not have been sold if English versions of Toshiba's quarterly

11   financial results were not made available to U.S. investors leaves no doubt that the

12   false information that Toshiba included therein was material to investors in deciding

13   whether to purchase those securities.  *E.g.*, *Rana Research*, 8 F.3d at 1362.

14          In a last gasp attempt to avoid liability, Toshiba asserts that its consent to the

15   sale of its shares as ADRs is not enough.  Toshiba makes no effort to explain why

16   this would be so.  The only support it provides for the argument is this Court's prior

17   opinion interpreting *Morrison*, which was expressly overruled by the Ninth Circuit.

18   Mot. at 14-15; *cf. Stoyas*, 896 F.3d at 949 ("it does not matter that a foreign entity

19   was not engaged in the transaction").  Its argument that the prior holding "comports"

20   with the mandate and can simply be re-adopted without further analysis "under the

21   rubric of the 'in connection with' requirement" is both conclusory and incorrect.

22   Mot. at 15.  Nothing in *Stoyas*, and nothing in the Ninth Circuit's jurisprudence

23   analyzing the in connection with requirement, supports that.

24

---

25   [42]  While plaintiffs have been unable, without the benefit of discovery, to obtain
     more information about BNYs acquisition of Toshiba common stock, the fact that it
26   is a major shareholder of the Company (¶74) demonstrates that its economic
     incentives were aligned with Toshiba's.  As such, the allegation provides some
27   additional support for the inference that the unsponsored ADR program would not
     have been established without Toshiba's consent or participation, or over its
28   objection.  Toshiba's contention that BNY's holdings are irrelevant is incorrect.

- 24 -

1    At bottom, Toshiba's arguments throughout the pendency of this action have

2    been that it is somehow unfair to hold it liable for the damages its fraud caused to

3    investors in the United States.  But this is just not true.[43]  The fact that Toshiba was

4    told about plans to sell its common stock as ADRs in the United States and given the

5    opportunity to prevent that but did nothing shows that it was aware that purchasers

6    of those securities would rely on the information it publicly reported about its

7    business, and that the damages it caused to those purchasers were foreseeable.

8    Toshiba had numerous opportunities to avoid liability for the harm it caused to those

9    investors.  It could have truthfully reported its financial results, and let investors

10   react as they saw fit.  It could have avoided subjecting itself to personal jurisdiction

11   in the United States.  It could have refused to consent to the sale of its securities as

12   ADRs in America.  It did none of these things.  Under these circumstances, there is

13   nothing unfair in the least in holding Toshiba liable for the substantial damages its

14   deliberate fraud inflicted on investors who purchased those securities in the United

15   States.

16   **III.    CONCLUSION**

17        For the reasons set forth above, Toshiba's motion to dismiss should be denied.

18   DATED:  October 31, 2019                ROBBINS GELLER RUDMAN &
                                                  DOWD LLP
19                                             DENNIS J. HERMAN
20                                             WILLOW E. RADCLIFFE
                                               JOHN H. GEORGE
21

22                                                      s/ Dennis J. Herman
                                                  DENNIS J. HERMAN
23

24

25

26

27   [43]   *Stoyas*, 896 F.3d at 950 ("it may very well be that the *Morrison* test in some cases
     will result in the Exchange Act's application to claims of manipulation of share value
28   from afar").

4830-8876-6379.v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

- 26 -

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify under penalty of perjury that on October 31, 2019, I authorized

3  the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF

4  system which will send notification of such filing to the e-mail addresses on the

5  attached Electronic Mail Notice List, and I hereby certify that I caused the mailing

6  of the foregoing via the United States Postal Service to the non-CM/ECF participants

7  indicated on the attached Manual Notice List.

8                                    s/ Dennis J. Herman
                                    DENNIS J. HERMAN
9
                                 ROBBINS GELLER RUDMAN
10                                   & DOWD LLP
                                 Post Montgomery Center
11                               One Montgomery Street, Suite 1800
                                 San Francisco, CA  94104
12                               Telephone:  415/288-4545
                                 415/288-4534 (fax)
13                               E-mail:  dennish@rgrdlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4830-8876-6379.v1

**Mailing Information for a Case 2:15-cv-04194-DDP-JC Mark Stoyas v. Toshiba Corporation et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jaime M Crowe**
  jcrowe@whitecase.com

- **Christopher M Curran**
  ccurran@whitecase.com

- **John Hamilton George**
  jgeorge@rgrdlaw.com

- **Dennis J Herman**
  dennish@rgrdlaw.com,jgeorge@rgrdlaw.com

- **Bryan A Merryman**
  bmerryman@whitecase.com,cgomez@whitecase.com,jdisanti@whitecase.com,irma.mares@whitecase.com,karmella.salgado@whitecase.com,rsequeira@whitecase.co

- **Danielle S Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Owen C Pell**
  opell@whitecase.com,jdisanti@whitecase.com,mco@whitecase.com

- **Willow E Radcliffe**
  willowr@rgrdlaw.com,e_file_sd@rgrdlaw.com,kirstenb@rgrdlaw.com,sbloyd@rgrdlaw.com,e_file_sf@rgrdlaw.com,3608655420@filings.docketbird.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Reuben J Sequeira**
  rsequeira@whitecase.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)