**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK STOYAS and NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND,<br><br>Plaintiffs,<br>and<br><br>AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, individual and on behalf of all others similarly situated,<br><br>Lead Plaintiff<br><br>v.<br><br>TOSHIBA CORPORATION,<br><br>Defendant. | Case No. 15-cv-4194 DDP (JCx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>[Dkt. 79] |

Presently before the court is Defendant's Motion to Dismiss the Second Amended Complaint. (Dkt. 79.) Having considered the submissions of the parties and heard oral

argument, the court adopts the following order.

**I. BACKGROUND**

The court has set forth the basic facts of the case in its prior order, (Dkt. 65), which it repeats here in relevant part. This case is a putative securities class action lawsuit. Plaintiffs are Automotive Industries Pension Trust Fund ("AIPTF"), a pension fund formed for the benefit of auto industry workers, (Second Amended Complaint ("SAC") ¶ 20); New England Teamsters & Trucking Industry Pension Fund ("NETPF"), a pension fund formed for the benefit of New England trucking industry workers, (*id.* ¶ 23); and Mark Stoyas, an individual, (*id.* ¶ 24), (collectively, "Plaintiffs"). Defendant is Toshiba Corporation ("Defendant"), a "worldwide enterprise that engages in the research development, manufacture, construction, and sale of a wide variety of electronic and energy products and services," headquartered in Tokyo, Japan. (*Id.* ¶ 25.)

Plaintiffs allege that Defendant violated the U.S. Securities Exchange Act of 1934 and Japan's Financial Instruments & Exchange Act ("JFIEA"). (*Id.* ¶ 1.) The proposed class consists of: "(i) all persons who purchased shares of TOSYY or TOSBF on the [Over-the-Counter Market ("OTC Market")] between May 8, 2012 and November 12, 2015 . . .; and (ii) all citizens of the United States who purchased shares of Toshiba common stock ('6502') during the Class period." (*Id.* ¶ 2; v.) "TOSYY is an American Depositary Receipt ('ADR') reflecting ownership shares of 6502 common stock that have been deposited with or are otherwise controlled by a depositary institution in the United States and held for the benefit of the TOSYY purchaser."[1] (*Id.* ¶ 40.) TOSBF is Toshiba

---

[1] "The shares so deposited are referred to as 'American Depositary Shares' ('ADSs')." (*Id.* at n.3.) The court notes that the terms "ADR" and "ADS" are used interchangeably to reference to the same type of security. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 940 n. 5 (9th Cir. 2018), cert. denied sub nom. *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund*, 139 S. Ct. 2766 (2019). For consistency the court uses the term "ADR."

common stock sold in the United States as "F-shares," "a foreign security denominated in U.S. currency, and traded on the U.S. OTC Market based in New York." (*Id.* ¶ 39.)

Lead Plaintiff, AIPTF, "purchased 36,000 shares of TOSYY through transactions on the OTC Market in the United States on March 23, 2015, thereby acquiring an ownership interest in 216,000 shares of 6502 common stock." (*Id.* ¶ 20.) Plaintiff NETPF made seven different purchases of Toshiba common stock on the Tokyo Stock Exchange during the class period, totaling over 100,000 shares. (*Id.* ¶ 23.) According to Plaintiffs, "[t]his case arises from Toshiba's deliberate use of improper accounting over a period of at least six years to inflate its pre-tax profits by more than $2.6 billion [ ] and conceal at least $1.3 billion [ ] in impairment losses at its U.S. nuclear business, Westinghouse Electric Co." (*Id.* ¶ 3.) Plaintiffs allege that "[b]etween April 3, 2015, when the internal investigation into Toshiba's accounting practices was first announced, and November 13, 2015, following the issuance of Toshiba's restatement and the revelation of the impaired goodwill at Westinghouse, the price of Toshiba securities declined by more than 40%, resulting in a loss of $7.6 billion [ ] in market capitalization that caused hundreds of millions of dollars in damages to U.S. investors in Toshiba securities." (*Id.* ¶ 11 (footnote omitted).)

Plaintiffs filed suit under U.S. federal securities laws, making claims under (1) sections 10(b) and 20(a) of the Securities Exchange Act of 1934, codified at 15 U.S.C. §§ 78j(b), 78t(a), and (2) SEC rule 10b-5, codified at 17 C.F.R. § 240.10b-5. (*Id.* ¶ 12.) Both claims for relief are made on behalf of TOSYY and TOSBF purchasers. (*Id.* ¶¶ 12, 334-61.) Plaintiffs also make claims under the JFIEA, over which they argue the court has diversity and supplemental jurisdiction. This third claim for relief is made on behalf of both ADR purchasers and 6502 purchasers. (*Id.* ¶¶ 364-76.) All claims relate to the allegations of Defendant's fraudulent accounting and misrepresentations. (*See* SAC.)

Plaintiffs filed the initial complaint on June 4, 2015, (Dkt. 1), and a First Amended Complaint on December 17, 2015. (Dkt. 34.) On February 1, 2016, Defendant moved to

dismiss the First Amended Complaint. (Dkt. 44.) On May 26, 2016, this court dismissed the First Amended Complaint with prejudice. (Dkt. 65.) Plaintiffs subsequently appealed, and on July 17, 2018, the Ninth Circuit reversed and remanded. (Dkt. 71.) Though the Ninth Circuit held that Plaintiffs had not sufficiently alleged a domestic transaction nor sufficiently alleged that the fraudulent conduct was "in connection with" the sale of securities, the court concluded that leave to amend should have been granted. (*Id.*) On August 8, 2019, Plaintiffs filed the operative Second Amended Complaint. (Dkt. 75.) Defendant now moves to dismiss under Rule 12(b)(6). (Dkt. 79.)

## II. LEGAL STANDARD

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

## III. DISCUSSION

Defendant argues that Plaintiffs' Second Amended Complaint ("SAC") must be dismissed because Plaintiffs failed to allege a domestic transaction under the Securities Exchange Act and failed to allege that Defendant's conduct was "in connection with" AIPTF's purchase of ADRs. (Motion to Dismiss "MTD" at 8-20.) Additionally,

Defendant argues that comity and *forum non conveniens* considerations compel dismissal of the Securities Exchange Act claims and the JFIEA claim. (*Id.* at 21-25.) The court addresses each in turn.

**A. Domestic Transaction**

Section 10(b) of the Securities Exchange Act of 1934 applies only to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 266-67 (2010). At issue here, is whether Plaintiffs have sufficiently alleged a domestic transaction. On appeal, the Ninth Circuit adopted the Second and Third Circuits' "irrevocable liability test to determine whether the securities were the subject of a domestic transaction." *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2018), cert. denied sub nom. *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund*, 139 S. Ct. 2766 (2019). In so holding, the Ninth Circuit concluded that "[l]ooking to where purchasers incurred the liability to take and pay for securities, and where sellers incurred the liability to deliver securities, hews to Section 10(b)'s focus on transactions and *Morrison*'s instruction that purchases and sales constitute transactions." *Id.* (citing *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012); *Morrison*, 561 U.S. at 267-68). In *Absolute Activist*, the Second Circuit explained that "the 'purchase' and sale' take place when the parties become bound to effectuate the transaction." *Absolute Activist*, 677 F.3d at 68. "Given that the point at which the parties become irrevocably bound is used to determine the timing of a purchase and sale, . . . the point of irrevocable liability can be used to determine the locus of a securities purchase or sale." *Id.* Thus, "factual allegations concerning contract formation, placement of purchase orders, passing of title, and the exchange of money are directly related to the consummation of a securities transaction." *Stoyas*, 896 F.3d at 949.

Defendant contends that Plaintiffs have not alleged a domestic transaction because the allegations demonstrate that Plaintiffs purchased the underlying securities in a foreign transaction before converting the foreign stock into ADRs. Defendant explains

that ADRs can be purchased on the secondary market or "issued" in exchange for deposited securities. (MTD at 4:28-5:1-2.) "When ADRs are not purchased on the secondary market but 'issued' in exchange for deposited securities [ ], the investor or its agent must first purchase the underlying securities for deposit." (*Id.*) Accordingly, Defendant argues that because Plaintiffs allege that TOSYY "was ***issued*** by Citibank," the court can draw the inference that AIPTF first purchased Toshiba stock in a foreign transaction and, in a second transaction, deposited the shares with Citibank in exchange for the ADRs at issue here. (*See* Reply at 2:1-14.) Therefore, Defendant argues, Plaintiffs cannot allege a domestic transaction because "Plaintiffs' conversion of their form of ownership interest from title holder of Toshiba common stock to beneficial owner through unsponsored ADRs does not qualify as a purchase." (Reply at 8:23-25.)

At the pleading stage, the court cannot accept Defendant's proposed inference based solely on the allegation that TOSYY "was issued by Citibank." To draw such an inference, the court would necessarily disregard Plaintiffs' numerous allegations explaining the nature of the ADR transaction that occurred here. Specifically, Plaintiffs allege that AIPTF "purchased 36,000 shares of TOSYY," (SAC ¶ 20), "[t]he placement of the buy order, the payment of the purchase price, [and] transfer of the title to the securities . . . took place within the territorial jurisdiction of the United States." (*Id.*) AIPTF's "purchase was directed by its outside investment manager ClearBridge Advisors LLC located in New York," "ClearBridge placed the buy order" through a broker located in New York, the broker purchased the TOSYY on "the OTC Market using the OTC Link trading platform, both of which are based in New York," "the purchase order and trade confirmation were routed through OTC Link's servers," the depositary bank, Citibank, issued the ADRs from the bank's office in New York, AIPTF made payment from a New York based bank, and a transfer of title was recorded in Citibank in New York. (*Id.* ¶ 22.) There are no allegations that AIPTF first purchased shares of 6502

common stock overseas and exchanged or otherwise converted that stock for ADRs.[2] Plaintiffs allege that a single transaction occurred—AIPTF's purchase of ADRs on the OTC Market.

Accepting Plaintiffs' allegations as true, as the court must at the pleading stage, Plaintiffs have plausibly alleged that AIPTF incurred irrevocable liability "to take and pay for the [ADRs]" in the United States. *See Absolute Activist*, 677 F.3d at 68. Allegations regarding the location of the broker, the tasks carried out by the broker, the placement of the purchase order, the passing of title, and the payment made are relevant to the domestic transaction inquiry. *Id.* at 68-70; *see also In re Petrobras Sec.*, 862 F.3d 250, 262 (2d Cir. 2017), cert. dismissed sub nom. *Petroleo Brasileiro S.A. v. Universities Superannuation*, 140 S. Ct. 338 (2019). While the court agrees that the location of the broker alone does not necessarily demonstrate where AIPTF incurred irrevocable liability, the allegations, taken together, provide sufficient indicia that AIPTF incurred irrevocable liability to purchase the ADRs in the United States. That discovery ultimately reveals that the ADR transaction involved an initial purchase of common stock in a foreign transaction, as Defendant contends, can be a matter properly raised at the summary judgment stage.

The court concludes that Plaintiffs have alleged facts "leading to the plausible inference that the parties incurred irrevocable liability within the United States." *Absolute Activist*, 677 F.3d at 68.

---

[2] Defendant also contends that Form F-6, providing that "[e]very person presenting Shares for Deposit shall be deemed thereby to represent and warrant that . . . (iv) the Shares presented for deposit are free and clear," supports the inference that AIPTF "certainly had already acquired title to the referenced Toshiba common stock because, . . . AIPTF was required to have deposited the referenced shares with Citibank 'free and clear' of any other ownership interest." (Reply at 5:7-10.) However, Defendant argues this provision out of context. The provision sets forth terms in the event there is a third-party claim to the underlying shares. The provision does not mean that AIPTF certainly acquired title to the shares in a foreign exchange and later converted that stock to ADRs.

**B. Sufficiency of the Security Exchange Act Allegations**

On appeal, the Ninth Circuit held that Plaintiffs had not sufficiently pled Toshiba's connection to the ADR transaction because first, Plaintiffs had not sufficiently set forth the transaction, and second, Plaintiffs had not sufficiently set forth Defendant's involvement in the establishment of the ADRs in the United States. *Stoyas*, 896 F.3d at 951-52. As discussed above, Plaintiffs have now sufficiently pled the ADR transaction. The only remaining issue is whether Plaintiffs have sufficiently alleged Defendant's involvement in the establishment of the ADRs.

Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale" of a security "any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). The Ninth Circuit has "held that for fraud to be 'in connection with the purchase or sale of any security,' it must 'touch' the sale—i.e., it must be done to induce the purchase at issue." *Stoyas*, 896 F.3d at 951 (citations omitted). A court "should consider whether the plaintiff has shown some causal connection between the fraud and the securities transaction in question." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment*, 189 F.3d 1017, 1026 (9th Cir. 1999). "Deception related to the value or merit of the securities in question has sufficient connection to securities transactions to bring the fraud within the scope of § 10(b)." *Id.*

Defendant argues that Plaintiffs have not sufficiently alleged that the fraudulent conduct "'induced' Plaintiffs to exchange Toshiba common stock for the unsponsored ADRs from Citibank, or that Toshiba had anything at all to do with that transaction."[3]

---

[3] Defendant also contends that the Ninth Circuit "instructed this Court to assess the 'in connection with' requirement in light of '*Morrison*'s animating comity concerns,' which is, Defendant argues, 'directly relevant' to 'sufficiently alleg[ing] an Exchange Act claim.'" (MTD at 19:3-6 (quoting *Stoyas*, 896 F.3d at 950).) Specifically, Defendant argues that prescriptive comity requires this court to construe the "in connection with" requirement narrowly. The court does not agree. A reading of the relevant Ninth Circuit opinion reveals that the Ninth Circuit was simply addressing Defendant's argument

(MTD at 11:24-26.) As discussed above, the court rejects Defendant's argument that Plaintiffs alleged two transactions.

Plaintiffs have sufficiently alleged the "in connection with" element. As deemed necessary by the Ninth Circuit, Plaintiffs have now alleged the nature of the TOSYY ADRs, the OTC Market, the Toshiba ADR program, including the depositary institutions that offer Toshiba ADRs, the Form F-6s, the trading volume, the contractual terms, and Toshiba's plausible consent to the sale of its stock in the United States as ADRs. (SAC § IV.) *See Stoyas*, 896 F.3d at 951-52 (discussing allegations necessary to plead Defendant's connection to the ADR transactions). Plaintiffs also allege that Bank of New York Mellon "was one of Toshiba's largest ten shareholders during the Class Period," "BNY held 1.3% (~ 55 million shares) of the Company's outstanding stock," and "it is unlikely that [that] many shares could have been acquired on the open market without the consent, assistance or participation of Toshiba." (SAC ¶¶ 74(b); *see also* ¶ 69(a)). The Ninth Circuit found this assertion, missing from the operative complaint on appeal, to be of importance in alleging a plausible "in connection" element. *See Stoyas*, 896 F.3d at 952. The court concludes that Plaintiffs have sufficiently alleged Toshiba's plausible participation in the establishment of the ADR program.

---

made on appeal that the Exchange Act should not apply because of comity concerns. The Ninth Circuit stated, in essence, that comity concerns were addressed by meeting the transactional test and sufficiently alleging an Exchange Act claim. *See Stoyas*, 896 F.3d at 950-51.

Moreover, Defendant's concern of interference in foreign securities regulation was also addressed by the Supreme Court in *Morrison*. The Supreme Court concluded that "[t]he transactional test [the Court] ha[s] adopted—whether the purchase or sale is made in the United States, or involves a security listed on a domestic exchange" met the requirement of a "clear test that w[ould] avoid" interference with foreign securities regulation. *Morrison*, 561 U.S. at 269-70. As such, the court concludes that prescriptive comity does not require that the court construe the "in connection with" requirement narrowly.

Plaintiffs have also sufficiently alleged that Defendant's fraudulent conduct concealed the true condition of the company and risks associated with its stock. Plaintiffs allege that Defendant's "misrepresentations and omissions were related to the value or merit of 6502, TOSYY and TOSBF, in that they concealed the true condition of Toshiba's business and the risks to its financial success and misled investors about the risks associated with the purchase or sale of securities evidencing an ownership interest in the Company." (SAC ¶ 155.) Plaintiffs allege that "[a]s a result of the improper and inaccurate accounting . . . Toshiba's quarterly and annual earnings reports included numerous materially false and misleading statements about its financial condition and results." (*Id.* ¶ 158.) The allegations plausibly demonstrate "some causal connection" between Defendant's conduct and the purchase or sale of the ADRs at issue. *See Ambassador Hotel*, 189 F.3d at 1026.

The court concludes that Plaintiffs have sufficiently pled the "in connection with" requirement.

**C. Comity Principles**

Defendant next argues that adjudicatory comity compels dismissal even if Plaintiffs have stated a claim under the Exchange Act. (MTD at 21-24.) "Comity similarly rests on respect for the legal systems of members of the international legal community — a kind of international federalism — and thus 'serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.'" *Mujica v. AirScan Inc.*, 771 F.3d 580, 605 (9th Cir. 2014) (quoting *E.E.O.C. v. Arabian Am. Oil*, 499 U.S. 244, 248 (1991)). In determining whether comity concerns call for dismissal, the Ninth Circuit has evaluated three factors as "a useful starting point for analyzing comity claims": (1) the strength of the United States' interest; (2) the foreign government's interest; and (3) the adequacy of the alternative forum. *Mujica*, 771 F.3d at 603. "The (nonexclusive) factors we should consider when assessing U.S. interests include (1) the location of the conduct in question, (2) the nationality of the

parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests." *Id.* at 604. "The proper analysis of foreign interests essentially mirrors the consideration of U.S. interests." *Id.* at 607.

In response to Defendant's comity argument on appeal, the Ninth Circuit explained that "[comity concern] is not a basis for declining to follow the Court's clear instructions in *Morrison*," and noted that "it may very well be that the *Morrison* test in some cases will result in the Exchange Act's application to claims of manipulation of share value from afar." *Stoyas*, 896 F.3d at 950. The Ninth Circuit did not address the doctrine of adjudicatory comity specifically, rather, it noted that Defendant's comity argument was "relevant to whether the Funds have sufficiently alleged an Exchange Act claim." *Id.* In other words, comity concerns are addressed, and lessened, when a plaintiff has sufficiently alleged conduct *in connection* with a *domestic* transaction. This is so because the United States has a significant interest in regulating conduct that occurs in a domestic securities transaction. Indeed, the Supreme Court held in *Morrison* that the transactional test met the requirement of a clear test that would avoid "interference with foreign securities regulation . . . ." *Morrison*, 561 U.S. at 269-70. As discussed above, under the transactional test, Plaintiffs have plausibly alleged a domestic transaction.

The nationality of the parties here similarly weighs in favor of strong U.S. interests: Plaintiffs are U.S. nationals and the proposed class is composed of U.S. nationals only. In the absence of an identifiable foreign or public policy interest in relation to the regulation of securities, specifically, the court concludes that the United States has significant interests in regulating securities transactions made in the United States. The allegations in this case are sufficient to permit this case to move forward in this forum.

Next, without significant argument or support, Defendant contends that the court "should not reconsider its prior decision" to dismiss the JFIEA claim under comity and *forum non conveniens* principals because the "dismissal was predicated on a detailed

consideration and analysis of the relevant factors." (MTD at 24:23-24.) However, as Plaintiffs point out, the clear import of the Ninth Circuit's decision declining to "address in the first instance whether dismissal of the JFIEA claim remain[s] appropriate notwithstanding the Exchange Act Claims' viability," is for this court to reconsider its prior dismissal of the JFIEA claim. *Stoyas*, 896 F.3d at n.25. In light of the court's conclusion that Plaintiffs have sufficiently alleged Securities Exchange Act claims, the court concludes that comity and *forum non conveniens* do not compel dismissal of Plaintiffs' JFIEA claim.[4]

## IV. CONCLUSION

Plaintiffs have sufficiently alleged that AIPTF purchased ADRs in a domestic transaction. Plaintiffs have also sufficiently alleged Toshiba's fraud "in connection with" the sale of the ADRs. Adjudicatory comity and *forum non conveniens* do not compel dismissal of Plaintiffs' Exchange Act claims or the JFIEA claim. The court denies Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: January 28, 2020

DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

---

[4] Defendant did not otherwise argue the issue, instead Defendant stated: "In any event, Toshiba hereby incorporates as if fully set forth here its prior arguments urging dismissal . . ." (MTD at 24:28-25:1.) The court declines to review prior briefing made for a separate motion. *See* L.R. 11-6.