**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARK STOYAS and NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND, Plaintiffs,<br><br>and<br><br>AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, individually and on behalf of all others similarly situated, Lead Plaintiffs<br><br>v.<br><br>TOSHIBA CORPORATION,<br><br>Defendants. | Case No.: 2:15-cv-4194–DDP (JCx)<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [152] [220]** |

## I. BACKGROUND

The parties are familiar with the facts of this case as set forth in the Court's prior orders. (*E.g.*, Dkts. 88, 146.) In opposition to Plaintiffs' class certification motion, Defendant Toshiba argued: (1) that Plaintiffs lacked statutory standing under the Financial Instruments & Exchange Act of Japan ("JFIEA"); and (2) Plaintiffs' could not adequately represent the class because some putative class members might be entitled to acquisition damages. The Court denied class certification without prejudice as to

Plaintiffs' JFIEA claims and ordered Toshiba to file a summary judgment motion addressing: 1) whether Plaintiffs have statutory standing to bring claims under JFIEA; and 2) whether any of the proposed class members' claims under JFIEA "require a showing of damages based on the acquisition of shares." (Dkt. 146). Having considered the parties' submissions and heard oral argument, the Court adopts the following Order.

## II. LEGAL STANDARD

The summary judgment motion arises here on two questions of Japanese law. "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Rulings on foreign law are not determinations of fact, so "even differences of opinion on the content, applicability, or interpretation of [a] foreign provision may not be characterized as a 'genuine issue as to any material fact'" *de Fontbrune v. Wofsy*, 838 F.3d 992, 999 (9th Cir. 2016), as amended on denial of reh'g and reh'g en banc (Nov. 14, 2016) (citations omitted).

## III. PLAINTIFFS' MOTION TO EXCLUDE

The Court first takes up Plaintiffs' motion to exclude Toshiba's experts Masao Yanaga and Hidefusa Iida. Plaintiffs argue that Yanaga and Iida's opinions "run afoul of Rule 44.1" because they are not relevant, not supported, not reliable, and improperly opine on ultimate facts. (Dkt. 220.)

Under Rule 44.1, the materials considered need not be otherwise admissible under the Federal Rules of Evidence. Fed. R. Civ. P. 44.1. Accordingly, experts considered under Rule 44.1 need not meet the standards of in Federal Rule of Evidence 702, as applied in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See Schultz v. Royal Caribbean Cruises, Ltd.*, No. 18-24023-CIV, 2020 WL 3035234, at *4 (S.D. Fla. June 5, 2020).

As a threshold matter applying to both Yanaga and Iida, Plaintiffs argue that Defendant improperly paid Yanaga and Iida after they wrote their declarations. Plaintiff reasons that "[t]his payment structure creates an undue and direct incentive to align the

expert's views with Toshiba's." The court does not weigh in on whether the payment structure impacts the witnesses' credibility, because the Rule 44.1 standard does not require such an inquiry. Thus, Plaintiffs argument that the payment structure "calls into question the reliability" of Yanaga and Iida's declarations, even if correct, does not mandate their exclusion under Rule 44.1.

**A. Yanaga's Credibility and Relevance**

Regarding Yanaga specifically, Plaintiffs first argue that Yanaga's testimony should be excluded because Yanaga plagiarized part of one of the textbooks listed on his CV. Yanaga's publisher received a copyright infringement claim for pages 866 to 872 of the JFIEA penalties section of the textbook in question. The publisher suspended sale of the textbook and apologized "for causing some parts [of the book] to infringe on someone else's copyright." (Dkt 218-6.) Toshiba argues that the "copyright issue was unintentional" and supply a new declaration of Yanaga explaining the circumstances of the violation. (Dkt. 223-3.)

The court declines to weigh in on whether Yanaga willfully plagiarized seven pages of the textbook in question. The purportedly infringed pages do not factor into Yanaga's declaration except for their inclusion in his list of publications. Even if Yanaga's credibility was diminished by the copyright issue, the court would still be entitled to refer to his declaration to aid its determination of foreign law.

Plaintiffs next argue that Yanaga's opinion does not address the legal question the Court granted leave to be addressed judgment. Rule 44.1 does not require so narrow a tailoring; it only requires that Yanaga's opinion "may aid" the Court in determining foreign law. Fed. R. Civ. P. 44.1. Thus, Yanaga's opinion is relevant and the court need not exclude it.

B. **Iida's Reliability**

Plaintiffs argue that Iida's opinion lacks proper support and is unreliable, because (1) it is based on Iida's subjective interpretation; (2) it contains a misstatement about the

Book-Entry Transfer Institution; (3) it does not utilize a relevant Japanese Supreme Court case; (4) it is based on the assumption of a validly existing trust; and (5) it improperly opines on ultimate facts. Although the first four issues may affect the weight to which the Court afford Iida's conclusions on certain matters, none of them discredit him so thoroughly as to "run afoul of Rule 44.1." As to its opinion on ultimate facts, that limitation does not apply to Rule 44.1 evidence, which does not need to pass through the standards of Federal Rule of Evidence 702. Thus, the court need not exclude Iida's opinion.

## III. ARTICLE 21-2 STANDING

The Court now turns to the merits of the summary judgment motion. In their opposition to Plaintiffs' class certification motion, Toshiba argued that Plaintiffs cannot represent the putative class because Plaintiffs lack statutory standing to bring their JFIEA claims.[1] Article 21-2 of the JFIEA provides that company officers who make false statements in securities registration documents persons shall pay damages to the "persons that acquires securities." (Dkt. 152-5.) Toshiba argues that "persons that acquire," or "acquirers, means "registered shareholders;" therefore, only "registered shareholders" have statutory standing to purse claims under the Article.

### A. The Plain Meaning of "Acquirers"

To begin with, the Court sets forth the plain meaning of "person that acquires securities." See *United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) ("[U]nless defined, words in a statute will be interpreted as taking their ordinary, contemporary, common meaning) (quoting *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012)). The ordinary, contemporary, common meaning of "person who acquires securities" is "person buys or obtains securities for oneself." *See Acquire*, CAMBRIDGE ENGLISH DICTIONARY (Online

---

[1] This argument was notably absent from Toshiba's two motions to dismiss, filed in 2016 (Dkt. 44) and 2019 (Dkt. 79).

Edition). To determine whether "person who acquires" must be more narrowly interpreted to mean "person who acquires rights as established by the entries or records in a Book-Entry Transfer account register" (*See* Dkt. 151 at 5.), the Court looks to the arguments and sources cited by Toshiba and Plaintiffs.

**B. The Importance of BETA**

Toshiba argues that Japan's Book-Entry Transfer Act ("BETA"), which provides a shareholder registry and system by which corporate securities are registered and transferred in Japan, is fundamental to the understanding of the terms of JFIEA Article 21-1. BETA's stated "purpose" is to "facilitate the distribution of rights" for corporate securities such as the Toshiba stock at issue here. (Dkt. 151-3 (BETA Article I).) Although BETA does not explicitly define those "rights" in its purpose section, Toshiba contends that the right to sue for damages under JFIEA is logically included. Indeed, a U.S. law review article summarizes that "the book entry…is the basis for the entire legal framework for establishing the rights of an account holder and the effectiveness of transfers of interests in book-entry securities." Kumiko Koens & Charles W. Mooney Jr., *Security Interests in Book-Entry Securities in Japan: Should Japanese Law Embrace Perfection by Control Agreement and Security Interests in Securities Accounts?*, 38 U. Pa. J. Int'l L. 761, 800 (2017). Because BETA is the basis for establishing the rights of owners of corporate stock, Toshiba reasons, unregistered[2] owners like Plaintiffs do not have the same rights as registered shareholders.

Plaintiffs do not dispute that Toshiba's securities trade on the system and registry established by BETA. The Court agrees that BETA is an important system and relevant to the interpretation of other securities laws in Japan, but the Court does not find that BETA's importance alone is enough to conclude that Article 21-2 excludes acquirers who

---

[2] (That is, not listed on BETA's shareholder registry.)

are not registered shareholders under BETA. To resolve its remaining doubt, the Court turns to the additional context the parties provide.

**C. The Lack of Explicit Mention of "Beneficial Ownership"**

Toshiba next argues that, because the Diet "knew precisely how to refer to the concept of beneficial ownership" and chose not to do so in Article 21-2, the Diet did not intend to allow beneficial owners to claim damages under Article 21-2. Indeed, the JFIEA refers to "beneficial interest in a trust" various times. (*See, e.g.*, Dkt. 152-5 at Art. 65-5.) Additionally, the JFIEA at one point defines the term "holder" of securities to include both those with direct shareholder rights and those with indirect shareholder rights. (Dkt. 152-5 at Art. 27-23.) It does not include such a definition in Article 21-2 for the term "acquirer."

But the Diet also "knew precisely how" to refer to the concept of shareholder registration, as it did elsewhere in the Act. (*See, e.g.*, Dkt. 152-5 at Art. 23-8) (referring to "shareholders that are stated or recorded in the shareholder register"). Thus, the Court cannot conclude that the lack of explicit discussion of beneficial ownership in Article 21-2, and the presence of explicit discussion of beneficial ownership elsewhere in the Act, means that beneficial owners are excluded from Article 21-2's remedies.

**D. Japanese Case Law**

The Court turns next to Japanese legal precedent. Both parties admit that no Japanese case or authority states whether only registered shareholders may sue under Article 21-2. (Dkt. 242 at 9:8-13.) Toshiba notes the existence of a 2008 Tokyo District Court case in which registered shareholders sued on behalf of various asset management groups, who were beneficial owners of the securities. (Dkt. 114-25 ¶ 3). Plaintiffs, on the other hand, note that other United States pension funds, including CalPERS, have sued Japanese corporations under Article 21-2 in Japan. Toshiba does not dispute that those pension funds were not registered shareholders per BETA. (Dkt. 152-6 ¶ 12-13.) As Toshiba concedes, "proper standing is not established simply by the assertion of a claim."

(Dkt. 152-6.) Because no Japanese case law exists ruling on the issue of Article 21-2 standing for beneficial owners, this factor weighs neither for nor against a finding that the Court should interpret "acquirers" as restricted to only registered shareholders.

**E. United States precedent**

Finally, the Court turns to Toshiba's argument that Ninth Circuit precedent compels a finding that beneficial owners cannot bring suit under Article 21-2. In *Batchelder*, the Ninth Circuit applied Japanese law and held that ADR holders were not "shareholders" and thus lacked standing to bring derivative actions. *Batchelder v. Kawamoto*, 147 F.3d 915, 922 (9th Cir. 1998), as amended (July 15, 1998). This Court finds the *Batchelder* holding inapposite here for four reasons: first, the Circuit was interpreting different Japanese law, since *Batchelder* predates BETA and the JFIEA; second, *Batchelder* interprets a different term ("shareholder" rather than "acquirer"); third, the claimants in *Batchelder* sought to institute a derivative action, not a direct Exchange Act action for fraud; and fourth, the *Batchelder* panel relied on the absence of contrary expert testimony when it ruled in favor of Honda.[3] *Batchelder*, 147 F.3d at 916, 921-22. Thus, as above, *Batchelder* does not require that the Court here impose a registration restriction on its interpretation of JFIEA.

***

Considering the totality of the circumstances, and that no Japanese case law or statute compels a finding that "person that acquires securities" must be interpreted as "registered book-entry shareholder," the Court adopts the plain meaning: person who purchases or otherwise obtains securities.

---

[3] Here, Toshiba's experts are contradicted by Plaintiffs' experts who opine directly on the subject. *Cf Batchelder*, 147 F.3d at 922 ("It is noteworthy that Batchelder's Japanese law scholar did not opine on this subject.").

## IV. ACQUISITION DAMAGES

In their opposition to Plaintiffs' motion for class certification, Toshiba additionally argued that class treatment would be inappropriate where some, but not all, putative class members might be entitled to seek the entire acquisition price of securities as damages. (Dkt. 114 at 38-39.) Plaintiffs responded that this measure of damages—acquisition damages—are only available in "extraordinary circumstances" and thus should not defeat class certification. (Dkt. 128 at 40.) Opposing Toshiba's summary judgment motion on the issue, Plaintiffs concede that some litigants in Japan do seek "[d]amage due to the acquisition itself" for similar claims against Toshiba in Japan. (Dkt. 179 at 21.) But Plaintiffs dispute the viability of the acquisition damages claim against Toshiba.

Toshiba's expert concedes that awards of acquisition damages are "restricted to [] limited case[s]." (Dkt. 230-3 at 101:19-25.) Moreover, Toshiba has not pointed to any case in which a court actually awarded acquisition damages for the alleged misconduct at issue here. Plaintiffs, on the other hand, point to case law in which a Tokyo District Court described but explicitly did *not* award acquisition damages. (Dkt. 182-4 at Toshiba-Stoyas-00191038) (May 13, 2021, Tokyo District Court Case) (noting how damages should be calculated "if it is highly likely that the shares would have been acquired despite false statements," then applying that non-acquisition-damages method). Thus, the Court cannot conclude that putative class members are so clearly entitled to acquisition damages that Plaintiffs will not be able to adequately represent them. Insofar as it argues the contrary, Toshiba's summary judgment motion is denied.

## V. CONCLUSION

The Court finds that Article 21-2 of the JFIEA does not categorically exclude unregistered shareholders and instead applies the plain meaning of "persons who acquire securities": persons who purchase or obtain securities. Further, the Court finds that the

mere hypothetical availability of acquisition damages does mean, as a matter of law, that Plaintiffs cannot adequately represent the putative class.

**IT IS SO ORDERED.**

DATED: September 14, 2023

**DEAN D. PREGERSON**
**United States District Judge**