O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARK STOYAS and NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND,<br><br>Plaintiffs,<br><br>and<br><br>AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Lead Plaintiff, | ) | Case No. 15-cv-04194 DDP-JCx<br><br>**ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT and MOTION FOR RECONSIDERATION**<br><br>[Dkts. 265, 266, 251, & 252] [JS-6] |

Presently before the Court are Defendant Toshiba's Motion for Partial Summary Judgment on the U.S. Exchange Act Claims (Dkt. 265) and Motion for Reconsideration (Dkt. 266) of the Court's September 14, 2023 Order, Dkt. 246. Having considered the

parties' submissions and heard oral argument, the Court adopts the following order granting the Motions for Summary Judgment and for Reconsideration.[1]

**I. BACKGROUND**

Plaintiffs Automotive Industries Pension Trust Fund ("AIPTF") and New England Teamsters & Trucking Industry Pension Fund ("NETTPF") (collectively "Plaintiffs") filed a putative securities class action against Defendant Toshiba Corporation ("Toshiba"), alleging violations of the U.S. Securities Exchange Act of 1934 ("Exchange Act") and the Financial Instruments & Exchange Act of Japan ("JFIEA") in connection with allegations of accounting fraud and misrepresentations. Dkt. 1, 75. AIPTF purchased 36,000 unsponsored Toshiba American Depository Receipts ("ADRs") on the U.S. OTC market. Dkt. 75 ¶ 20. NETTPF purchased 343,000 shares of Toshiba common stock. Dkt. 34 Ex. B. Both Plaintiffs bring claims under the JFIEA and AIPTF also brings claims under the Exchange Act. Because the parties are familiar with the facts of this case, as set forth in the Court's prior orders, e.g. Dkts. 88 and 146, the Court will proceed to the pertinent procedural background.

Earlier in these proceedings, Toshiba moved to dismiss Plaintiffs' Exchange Act and JFIEA claims. Dkt. 44. The Court granted the motion and dismissed both claims with prejudice. Dkt. 65. With respect to the Exchange Act claims, the Court concluded that Plaintiffs failed to adequately allege that the ADRs were purchased in a domestic transaction within the territorial reach of the Exchange Act. *Id.* As for the JFIEA claims, the Court found that, in the absence of viable U.S. claims, considerations of comity and *forum non conveniens* compelled dismissal of Plaintiffs foreign law claims. *Id.* Plaintiffs appealed. Dkt. 68.

---

[1] Plaintiff's Ex Parte Application to Strike Toshiba's Supplemental Response (Dkt. 296) to Plaintiff's Statement of Genuine Disputes, Dkt. 297, is GRANTED. The Court has not considered the Supplemental Response in deciding the Motion for Summary Judgment.

On appeal, the Ninth Circuit affirmed in part and reversed in part. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 952 (9th Cir. 2018). Although the Ninth Circuit agreed that Plaintiffs had failed to "sufficiently allege a domestic violation of the Exchange Act," the court remanded to allow Plaintiffs to amend the complaint. *Id.* The Ninth Circuit declined to address whether dismissal of the JFIEA claims would be appropriate if Plaintiffs were to adequately allege Exchange Act claims. *Id.* at n.25.

Plaintiffs then filed a Second Amended Complaint ("SAC") and Toshiba again moved to dismiss, again contending that Plaintiffs' Exchange Act claims were not adequately alleged and that Plaintiffs' JFIEA claims should be dismissed based on comity and *forum non conveniens*. Dkts. 75, 79. This Court determined that the SAC adequately alleged Exchange Act claims, and that comity and *forum non conveniens* no longer compelled dismissal of the JFIEA claims given the viability of the U.S. claims. Dkt. 88. Accordingly, the Court denied Toshiba's motion to dismiss. *Id.*

Plaintiffs subsequently sought class certification. Dkt. 108. This Court denied Plaintiffs' motion to certify a class for either the Exchange Act or JFIEA claim. Dkt. 146 (amended Dkt. 148). The Court denied certification of an Exchange Act class with prejudice, concluding that because AIPTF incurred irrevocable liability when Barclays, acting as its agent, executed the purchase of the underlying Toshiba stock in Japan, AIPTF purchased the Toshiba ADRs in a foreign transaction, to which the Exchange Act does not apply. *Id.* The Court denied class certification regarding the JFIEA claims without prejudice, however, finding the issues raised by the parties more appropriate for consideration on summary judgment. *Id.* Accordingly, the Court ordered Toshiba to file a motion for summary judgment addressing, as pertinent here, whether Plaintiffs have statutory standing to bring claims under Article 21-2 of the JFIEA. Dkt. 147.

After considering Toshiba's resulting motion, the Court denied summary judgment. Dkt. 246. At the time, "no Japanese case law exist[ed] ruling on the issue of Article 21-2 standing for beneficial owners." *Id. at 7.* Examining this novel question, the

Court found, in relevant part, that Article 21-2 of the JFIEA does not exclude unregistered shareholders from the definition of "person who acquires" securities and, therefore, beneficial owners have standing to pursue claims under the JFIEA. *Id.* Subsequently, however, on December 23, 2023, a three-judge panel of the Tokyo District Court addressed the same question and came to a contrary conclusion. Dkt. 273-2. The Tokyo District Court dismissed JFIEA claims brought by non-registered shareholder plaintiffs, reasoning that only registered shareholders whose book-entry transfer accounts were credited with an increase qualify as "persons who acquired" and, therefore, "there is no basis for any claim for damages by any non-registered shareholder plaintiffs under Article 21-2." *Id.* at 7.

Defendant Toshiba now brings three motions. First, Toshiba moves for summary judgment on AIPTF's Exchange Act claims, arguing that this Court already determined at the class certification stage that "AIPTF purchased the ADRs in a foreign transaction" not subject to the Exchange Act. Dkt. 265. Second, Toshiba seeks dismissal of the JFIEA claims as a matter of comity and *forum non conveniens* based on the alleged lack of any viable U.S. claims, should the motion for summary judgment be granted. Dkt. 251. Third, in light of the Tokyo District Court's decision holding that beneficial owners lack statutory standing under the JFIEA, Toshiba moves for reconsideration of this Court's September 14, 2023 order denying summary judgment on the JFIEA claim. Dkt. 266. The Court has heard oral argument on Toshiba's three motions and considered supplemental briefing on the Motion for Summary Judgment for the Exchange Act claims. Dkt. 287.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine dispute of material facts "[w]here the record taken as a whole could not a lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson*, 477 U.S. 242. Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 102, 1031 (9th Cir. 2001). The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition paper with adequate references so that it could conveniently be found." *Id.*

**B. Reconsideration**

Federal Rule of Civil Procedure 54(b) "grants courts the authority to modify their interlocutory orders." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989). Similarly, Local Rule 7-18, which governs motions for reconsideration within the Central District of California, provides that reconsideration motions may only be made on the grounds of: "(a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence

of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the court before the Order was entered." Local Rule 7-18. Reconsideration is appropriate when "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law[, or] other highly unusual circumstances warranting reconsideration." *Orange Cnty. Water District v. Unocal Corp.*, No. 03-01742-CJC (ANx), 2018 WL 6133718, at *4 (C.D. Cal. Feb 8, 2018) (quoting *Sch. Dist. No. 1J, Multnomah Cnty., Oregon v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993) (internal quotation marks omitted)). Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion." *Milton H. Green Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp 2d 1152, 1162 (C.D. Cal. 2008); *Daghlian v. DeVry Univ., Inc.*, 582 F. Supp. 2d 1231, 1252 (C.D. Cal. 2007).

## III. DISCUSSION

### A. AIPTF's Exchange Act Claims

In denying Plaintiffs' Motion for Class Certification, this Court reasoned that the triggering event that caused AIPTF to incur irrevocable liability — Barclay's purchase of the underlying shares — occurred in Japan, which in turn meant "AIPTF purchased the ADRs in a foreign transaction," and therefore AIPTF could not satisfy the typicality requirement of Rule 23 for Exchange Act claims. Dkt. 148 at 10:14–15. Toshiba now argues that this conclusion entitles Toshiba to summary judgment on AIPTF's Exchange Act claims. *See generally* Dkt. 265.

Section 10(b) of the Exchange Act does not apply extraterritorially. *Morrison v. National Australia Bank*, Ltd., 561 U.S. 247, 265 (2010). In *Morrison*, the Supreme Court reiterated, and noted that lower courts were disregarding, a presumption against extraterritorial application of the Exchange Act. *Id.* at 255. The Court emphasized that Section 10(b) only applies to deceptive conduct in connection with domestic transactions

– "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Id.* at 266–67. Further, the Court explained, "regard[ing] securities *not* registered on domestic exchanges, the exclusive focus [is] on *domestic* purchases and sales." *Id.* at 268 (emphasis in original).

*Morrison* did not, however, set forth a methodology for determining whether a transaction involves a domestic purchase and sale, and such analyses are not always clear-cut. In an effort to develop a workable framework, several circuit courts have adopted the "irrevocable liability test" originally set forth in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012), to determine whether a transaction is foreign or domestic. *See Stoyas*, 896 F.3d at 949; *United States v. Georgiou*, 777 F.3d 125, 137 (3d Cir. 2015). In *Absolute Activist*, the Second Circuit held that "transactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States." *Absolute Activist*, 677 F.3d at 67. The Ninth Circuit, in its opinion arising from the instant action, adopted this test, reasoning that "[l]ooking to where purchasers incurred the liability to take and pay for securities, and where sellers incurred the liability to deliver securities, hews to Section 10(b)'s focus on transactions and *Morrison's* instruction that purchases and sales constitute transactions." *Stoyas*, 896 F.3d at 949 (internal citation and citation omitted). The Ninth Circuit further noted that "factual allegations concerning contract formation, placement of purchase orders, passing of title, and the exchange of money are directly related to the consummation of a securities transaction." *Id.*

This Court applied this newly adopted test at the class certification stage, denying class certification on the Exchange Act claims because the Court determined that AIPTF's claims were based on a foreign transaction. *See generally* Dkt. 148. Now, pointing to this Court's conclusions at class certification, Toshiba raises a law of the case argument, contending that this Court has already determined that the transaction at issue here was a foreign transaction to which the Exchange Act does not apply. *See generally* Dkt. 265.

As this Court noted in its order denying class certification, "[b]ecause the merits of the claims are 'intimately involved' with many class certification questions, the Court's rigorous Rule 23 analysis must overlap with merit issues to some extent." Dkt. 148 at 4:27–5:3 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011)). In order to determine if class certification was warranted, the Court was required to look to whether the transaction at issue was foreign or domestic. As Plaintiffs point out, however, and as this Court also recognized when denying class certification, class certification rulings are not meant to determine the merits of the underlying claims, but only to determine if the requirements of Rule 23 are met. Dkt. 148 at 4:20–22; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Moreover, "*Morrison* makes clear that whether § 10(b) applies to certain conduct is a merits question." *Absolute Activist*, 677 F.3d at 67. Toshiba is not, therefore, entitled to summary judgment solely based on this Court's prior Order or the law of the case.

On the merits, Plaintiffs argue that there is good reason to depart from the Court's prior conclusion that AIPTF incurred irrevocable liability in Japan and that Toshiba has not met its higher burden at summary judgment to show as much. Dkt. 275-2 at 6–25. Specifically, Plaintiffs argue that Toshiba has not satisfied two of the three prongs of the *Absolute Activist* irrevocable liability test: where the seller incurred liability and where passing of title occurred.

While Plaintiffs are correct that the standards and burdens at summary judgment differ from those at the class certification stage, Toshiba has met the higher summary judgment standard. Whether a transaction is within the territorial reach of the Exchange Act is predominately a legal issue. *See Absolute Activist*, 677 F.3d at 67. Plaintiffs nevertheless assert that the predicate question of where irrevocable liability attached is a question of fact for a jury to decide. *See* Dkt. 275-2 at 3:2–5; 4:12–19; 11:16–19; 13:10–13. In some cases, a determination of where liability attached could involve a genuine factual dispute. If the parties disputed, for instance, where certain aspects of the transaction

took place, who participated in the transaction, or where those participants were located, such questions of fact could be submitted to a jury. However, no such questions are at issue here.[2] Here, there are no disputes about who did what, or where, but rather what, if any, legal significance attached to certain stages of the transaction and various relationships between parties involved in the transaction. *See generally* Dkt. 114; Dkt. 128; Dkt. 265; Dkt. 275; Dkt. 279. Such determinations regarding legal significance are questions of law for the court, not a jury, to decide. *See Outlaw v. Airtech Air Conditioning and Heating, Inc.*, 412 F.3d 156, 164 (D.C. Cir. 2005).

There is no dispute as to the pertinent facts here. Toshiba is incorporated and headquartered in Japan and its stock is traded only on Japanese exchanges. SAC ¶¶ 25, 38. AIPTF delegated investment decisions to ClearBridge Investments, LLC ("ClearBridge"). Dkt. 114-4. ClearBridge placed a market order[3] for 71,000 Toshiba ADRs, 36,000 of which were for AIPTF, with its brokerage firm, Barclays Capital Inc. ("Barclays"). Dkt. 114-8. Barclays traders in New York instructed traders in Japan to execute the purchase of common stock in Japan for conversion to ADRs, on behalf of ClearBridge. Dkt. 114-14. Barclays acted in a riskless principal capacity in the transaction.[4] Dkt. 114-9. Following the purchase of the Toshiba stock, Barclays messaged

---

[2] To the extent Plaintiffs argue that the class certification motion was decided prior to the close of discovery, that discovery should be reopened, or that new evidence exists, these arguments are wholly unconvincing. *See* Dkt. 276-1 at 7:16–8:2; 32:20–25:13. Plaintiffs have not pointed to any disputed fact requiring further discovery, nor identified any discoverable information that might affect the court's analysis of the domesticity issue. *See* Dkt. 276-1 at 24:20–25:5.

[3] "A market order is an order to buy or sell a stock at the best available price. Generally, this type of order will be executed immediately." Sec. & Exch. Comm'n, Office of Inv'r Educ. and Advoc., "Investor Bulletin: Understanding Order Types" (July 12, 2017).

[4] A riskless principal capacity is one in which the broker-dealer purchases securities with a buyer already lined up to take the securities at a certain price. *See* Sec. & Exch. Comm'n, Office of Inv'r Educ. and Advoc., "Investor Bulletin: How to Read

ClearBridge to relay that it had acquired the stock necessary to fill the ADR order, the price of the ADRs (including the markup, i.e. commission), ClearBridge agreed, and Barclays responded that it was filling the ADR ticket. Dkt. 114-12.

Plaintiffs, focusing on the purchase and sale of the ADRs, contend that irrevocable liability attached when Barclays informed ClearBridge that it was filling the ADR ticket. Because Barclays notified Clearbridge in the United States and the subsequent conversion of the stock into ADRs took place in the United States, Plaintiffs argue, irrevocable liability also attached in the United States, and therefore the transaction was domestic. Dkt. 276-1 at 14:20–15:24; 22:27–28. However, as at the class certification stage, Plaintiffs gloss over the first step in the ADR conversion process: the purchase of the underlying stock. The ADR order was a market order, meaning Barclays did not need ClearBridge's permission to execute the purchase of the shares in Japan. Dkt. 128-3 at 39:6–9. By the time Barclays confirmed the price and that it was filling the ADR ticket, Barclays had already executed the purchase of the Toshiba common stock. Dkt. 114-12. Barclays confirmed the ADR price purely as a professional courtesy and ClearBridge's agreement was not necessary. Dkt. 128-3 at 39:13–21. It was Barclays's execution of the purchase of the stock for conversion on ClearBridge's behalf that triggered AIPTF's liability to take and pay for the ADRs.

Implicit in Plaintiffs' argument is the contention that Barclays was acting on its own behalf in purchasing the Toshiba stock, and not acting as an agent. Dkt. 275-2 at 15:25–16:7. But a riskless principal is "riskless" because the broker-dealer purchases a security without incurring any of the risks of ownership because it knows it can sell the security at a certain price. Thus, a riskless principal is understood to substantively be operating as an agent. *See, e.g.*, Joseph I. Goldstein & L. Delane Cox, *Penny Stock Markups*

---

Confirmation Statements" at 1-2 (Sept. 2012); *see also* Joseph I. Goldstein & L. Delane Cox, *Penny Stock Markups and Markdowns*, 85 Nw. U.L. Rev. 676, 684 (1990).

*and Markdowns*, 85 Nw. U.L. Rev. 676, 684 (1990) ("If the brokerage firm receives the customer's order prior to purchasing the security from a dealer, then the transaction is called a 'riskless principal' transaction because the firm does not incur any risks of ownership, such as price fluctuations or liquidity problems. Thus, even though the firm is acting as a principal in the transaction, its function is analogous to that of an agent."); Pamela E F. LeCren, Advisory Opinion, FDIC Law, Regulations, Related Acts, "Subsidiary Requirements for Broker-Dealer Subsidiary Engaged in Riskless Principal Transactions in U.S. Government Securities, Municipal Bonds and Revenue Bons" (Mar. 28, 1988) ("The Securities and Exchange Commission has characterized riskless principal transactions as being in many respects equivalent to transactions effected on an agency basis and further has said such transactions are, in economic substance, agency transactions.").

Barclays did not assume any risk in purchasing the Toshiba stock because ClearBridge (i.e. AIPTF) had already agreed to purchase the converted ADRs at market price. Dkt. 138-2 at 11:13–15. Any time prior to the purchase of the Toshiba stock, ClearBridge was free to cancel the ADR order. But once Barclays fully executed the purchase of common stock on the Tokyo Stock Exchange, ClearBridge (i.e. AIPTF) could no longer cancel the ADR order without penalty. Dkt. 128-3 at 72:15-22. Thus, as the Court previously determined, "[t]he moment Barclays completed the purchase of Toshiba common stock on the Tokyo Stock Exchange, AIPTF became logically and legally bound to perform its contractual obligations," to take and pay for the ADRs, once converted. Dkt. 148 at 8:8–14. Because that liability-triggering purchase of the stock undisputedly took place in Japan, AIPTF purchased the ADRs in a foreign transaction.

The other prongs of the irrevocable liability test also indicate this was a foreign transaction. Again, Plaintiffs focus solely on the ADRs in a vacuum, alleging that Barclays is the only relevant seller and that title to the ADRs is the only relevant title, and continuing to ignore the initial necessary step to the creation of the ADRs: the sale and

transfer of the Toshiba common stock. *See generally* Dkt. 275-2. Logically, where purchasers incur liability to take and pay for securities will typically be the same location where sellers incur the liability to deliver securities. The individual sellers of the stock on the Tokyo Stock Exchange on the other side of the transaction from Barclays incurred liability to deliver the underlying Toshiba common stock in Japan at the moment of sale in Japan. Dkt. 229-1 at 8:6–8; 114-13. Similarly, with respect to title, after Barclays purchased the common stock on ClearBridge's behalf in Japan, title to that stock transferred from the former stockholders to Barclays in Japan. Dkt. 114-13. Thus, all three prongs of the irrevocable liability test indicate that this was a foreign transaction.

Viewing the facts and drawing all reasonable inferences in the light most favorable to Plaintiffs, the Court concludes, consistent with but not resulting from the Court's prior order denying class certification, that the triggering and relevant event for irrevocable liability was the sale of the underlying Toshiba common stock in Japan. While aspects of the ADR transaction took place in the United States, this alone is not sufficient to render the transaction a domestic one. As the *Morrison* Court noted, "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." *Morrison*, 561 U.S. at 266.

This case highlights several broader potential concerns in the application of *Morrison* and the irrevocable liability test. As Plaintiffs' counsel conceded at argument, if courts were to look at ADRs in a vacuum, as Plaintiffs ask this Court to do, without reference to whether the ADRs were sponsored or unsponsored or regard for whether the ADRs were already in existence or created for and at the request of purchaser – then ADRs could <u>never</u> be the result of a foreign transaction, and the Exchange Act would

apply to ADR transactions almost by definition.[5] Such an approach and outcome would be inconsistent with the principles the Supreme Court reiterated in *Morrison*.

Prior to *Morrison*, ADRs not listed on an official U.S. exchange, like those at issue in this case, were considered to be "predominately foreign transactions." *See Copeland v. Fortis,* 685 F.Supp.2d 498, 506 (S.D.N.Y. 2010). Indeed, even post-*Morrison*, the Second Circuit and courts within the Second Circuit have continued to recognize that some transactions may technically satisfy the requirements of the irrevocable liability test but nevertheless be "predominately foreign," tacitly acknowledging the reality that a judicially created test cannot foresee all potential real-world applications of the rule. *See Parkcentral Global Hub v. Porsche Auto. Holdings*, 763 F.3d 198, 216 (2d Cir. 2014); *see also In re Société Générale Sec. Litig., No*. 08 Civ. 2495 (RMB), 2010 WL 3910286, at *4 (S.D.N.Y. Sept. 29, 2010). Other courts, however, including the Ninth Circuit in *Stoyas*, have rejected the "predominately foreign" logic as inconsistent with Morrison. *See Stoyas*, 896 F.3d at 950; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 66281, at *5 n.4 (N.D. Cal. Jan. 4, 2017); *Wu v. Stomber*, 883 F. Supp. 2d 233, 253 (D.D.C. 2012). But, it seems anomalous that the *Morrison* opinion, which was intended to rein in the impermissible application of the Exchange Act abroad, would expand the application of Exchange Act to transactions like ADRs that previously would have been considered foreign.

Application of the Exchange Act in a case such as this, where the Defendant is a foreign corporation that sells its stock exclusively on a foreign exchange without any interaction with the U.S., is exactly the type of impermissible extraterritorial application

---

[5] Such an outcome necessarily follows from Plaintiffs' cited authority, *Sheet Metal Workers National Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-0473-RS, 2023 WL 3569981 (N.D. Cal. May 19, 2023), which determined the second and third prongs of the irrevocable liability test, and in turn *Morrison*, were satisfied with respect to both existing and new ADRs.

*Morrison* decried. Under Plaintiffs' interpretation of *Morrison* and *Stoyas*, an individual located in the U.S. can avail themselves of the benefits of owning a foreign corporation's stock, yet also impose U.S. law upon a foreign defendant without its knowledge of, consent to, or involvement in the transaction through conversion of the foreign corporation's stock into unsponsored ADRs. To hold that such an outcome is permissible would undermine *Morrison*'s central principle that the Exchange Act does not apply abroad.

Further, the Court is deeply concerned about the potential manipulation of the irrevocable liability test to apply the Exchange Act to transactions that common sense dictates are clearly foreign in nature. Parties could manipulate where and when liability attaches through contract, making *Morrison* subject to the vagrancies of clever lawyering. For example, in a case like this one, Barclays and ClearBridge could have contracted for liability to attach when the order was initially placed (prior to the purchase of the underlying Toshiba stock), or only upon transfer of the ADRs, in an effort to implicate the Exchange Act without changing the fundamental nature of the transaction. Or, more broadly, investors and traders could agree by contract at the onset of their relationship that liability for all transactions attaches in the United States, potentially bypassing any inquiry into where the transaction took place. Although the Court doubts the *Morrison* Court intended such a result, any tension between *Morrison* and the irrevocable liability test does not affect the outcome of this case under the circumstances presented here.

For the above reasons, the Court concludes irrevocable liability attached in Japan, and, thus, the transaction here was foreign and beyond the scope of the Exchange Act. Accordingly, the Court GRANTS Defendant Toshiba's Motion for Summary Judgment on AIPTF's Exchange Act Claims.

**B. Motion for Reconsideration of Court's September 14, 2023 Order**

The Court now turns to Defendant's Motion for Reconsideration of the Court's September 14, 2023 Order. Article 21-2 of the JFIEA provides that company officers who

make false statements in securities registration documents shall pay damages to the "persons that acquire securities." Dkt. 152-2. Toshiba argued in its underlying motion for summary judgment that "persons who acquire," or "acquirers," means "registered shareholders," and, therefore, only "registered shareholders," not beneficial owners like Plaintiffs, have statutory standing to pursue claims under Article 21-2. Dkt. 151. Toshiba's arguments were premised on the reasoning that Japan's Book Entry Transfer Act ("BETA"), which provides a shareholder registry and system by which corporate securities are registered and transferred in Japan, is the basis for establishing the rights of corporate stock owners and, therefore, only owners registered on the BETA's shareholder registry have standing under Article 21-2.

"[N]o Japanese case law exist[ed] ruling on the issue of Article 21-2 standing for beneficial owners," at the time this Court concluded that "Article 21-2 of the JFIEA does not categorically exclude unregistered shareholders," and that "persons who acquire securities" means "persons who purchase or obtain securities." Dkt. 246 at 7:1–2, 8:24–26. Only two months later, the Tokyo District Court addressed the precise issue of "[w]hether plaintiffs who are not registered shareholders qualify as 'persons who have acquired' securities." Dkt. 272-2 at 4. The Tokyo District Court reached the opposite conclusion from this Court and held that "Plaintiffs who have not acquired Defendant's Shares in their own names in the context of this action (non-registered shareholder plaintiffs) are not registered shareholders whose book-entry transfer accounts were credited with an increase, they do not qualify as the above-described 'persons that have acquired'. Therefore, . . . there is no basis for any claim for damages by non-registered shareholder plaintiffs under Article 21-2, Paragraph 1 of the FIEA." Dkt. 272-2 at 6–7. Toshiba now argues that this Court should reconsider its prior conclusion and order in light of the Tokyo District Court's ruling. Dkt. 266 at 6:21–24. The Court agrees.

As an initial matter, Plaintiffs contend that Toshiba has failed to meet the standard for reconsideration under the Local Rules because the Tokyo District Court's decision is

not final, and cannot be considered an intervening change in controlling law. Dkt. 272 at 5–6. However, the Court finds that a decision of a foreign court interpreting its own nation's laws for the first time, even if not "controlling law," constitutes sufficient "new material facts or change in law" under the local rules for the Court to revisit a prior order, especially when the Court's order is in direct opposition to the foreign court's interpretation. L.R. 7-18. Further, a decision by a foreign court addressing the exact, novel issue so shortly after this Court's order is, if nothing else, a highly unusual circumstance that warrants reconsideration. *Orange Cnty. Water District*, No. 03-01742-CJC (ANx), at *4.

Plaintiffs further argue that because Japan's legal system follows the Civil Law tradition and the order is being appealed, the Tokyo District Court order is not binding on any Japanese court, let alone on this Court. Dkt. 272 at 5–9. Plaintiffs also assert that the Tokyo District Court's opinion is neither persuasive nor instructive because it is a "conclusory decision without analysis." *Id.* at 9:24–25. The Court disagrees and finds the Tokyo District Court decision to be persuasive, even if not binding. Plaintiffs' own expert acknowledged that even in a "Civil Law paradigm that envisions a judge applying rather than interpreting law, there are judge-made legal norms interpreting the different codes and statutes," and that Japanese case law, while not binding, is not insignificant as a source of law, even if only in a "supplementary way." Dkt. 273-4, Declaration of Andrew M. Pardieck, ¶¶ 14–15. Toshiba's expert, a former Chief Judge of the Tokyo District Court and of the Tokyo High Court (an appellate court), stated that during his time as a judge, "parties would cite district court cases as authority, even if appeals were pending; and the courts [he] served on would consider and rely on district court cases as authority, even if appeals were pending." Dkt. 282-2, Declaration of Takafumi Okuda, ¶ 7. Given that this is the first Japanese court decision addressing the issue, it appears to this Court, informed by the parties' experts' declarations, that the Tokyo District Court's opinion "will carry significant weight on the standing issue both among practitioners and

other courts adjudicating standing under Article 21-2." *Id.* at ¶ 8. Further, Plaintiffs' suggestion that the Tokyo District Court's analysis is lacking because it failed to cite authority is without merit, as there was no previous authority interpreting the meaning of "persons who acquire" for the Tokyo District Court to draw upon and the decision provides ample analysis and explanation for its interpretation. *See* Dkt. 273-2 at 4-7.

The Tokyo District Court arrived at its decision through a "natural and literal interpretation based on the rules established by the BETA." Dkt. 273-2 at 5. Conversely, this Court's prior order stated, "the Court does not find that the BETA's importance alone is enough to conclude that Article 21-2 excludes acquires who are not registered shareholders under BETA," indicating that this Court misunderstood or underestimated the significance of the BETA in interpreting Article 21-2. Dkt. 246 at 5:22–6:2. The Court's view of the law is guided by American principles, and as the Supreme Court noted in *Morrison*, "the [securities] regulation of other countries of differs from ours," and "[t]he probability of incompatibility [the Exchange Act] with the applicable laws of other countries is [] obvious." *Morrison*, 561 U.S. at 269. That this Court's interpretation is directly at odds with the Japanese court's illustrates why reconsideration is necessary, as a foreign court is in a far better position to interpret its own nation's laws. Accordingly, the Court grants Toshiba's Motion for Reconsideration.

Turning to the merits of the underlying motion for summary judgment, Plaintiffs lack statutory standing. Now having the benefit of guidance from a Japanese court, this Court finds that in order to establish standing under Article 21-2 of the JFIEA as a "person who acquires," Plaintiffs must be the registered shareholder. Beneficial ownership is not sufficient. Here, Toshiba's book-entry transfer institution did not list the Plaintiffs as registered shareholders during the relevant period of time, and Plaintiffs do not genuinely dispute that they are only beneficial owners of Toshiba common stock. *See* Dkt. 75 ¶ 37; Dkt. 152-1; Dkt. 152-2; *see also* Dkt. 272; Dkt. 179; Dkt. 229-1 at ¶46–47; Dkt. 229; Dkt. 128 at 38:2–39:5; Dkt. 290 Ex. 13. Plaintiffs therefore lack standing under

the JFIEA. Accordingly, the Court grants the underlying motion for summary judgment, Dkt. 151.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Summary Judgment on AIPTF's Exchange Act claims and Defendant's Motion for Reconsideration are GRANTED.[6]

**IT IS SO ORDERED.**

Dated: MAY 16, 2024

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

[6] Having granted Defendant's Motion for Reconsideration, the court need not address Defendant's Motion to Dismiss the JFIEA claims. That motion is, therefore, vacated as moot.